RONALD K. WATTS, A MINOR, BY AGNES WATTS, HIS MOTHER AND NATURAL GUARDIAN, v. CARL A. ERICKSON.[1]

April 1, 1955.

No. 36,473.

---

[1]Reported in 69 N. W. (2d) 626.

*Herbert E. Olson,* for appellant.
*L. A. Erickson,* for respondent.

FRANK T. GALLAGHER, JUSTICE.

Appeal from an order of the district court denying plaintiff's motion for a new trial on the issue of damages only or, in the alternative, on all the issues.

On December 15, 1952, Ronald K. Watts was struck and injured as he was crossing a street in Roseau, Minnesota, by a 1937 Terraplane automobile driven by defendant, Carl A. Erickson, then chief of police of Roseau. The accident occurred sometime between 10 and 11 a. m. at the west end of "north bridge" on state trunk highway No. 11, which runs generally east and west as it proceeds across "north bridge." The highway is 32 feet wide as it crosses the bridge and it widens gradually to 60 feet after it leaves the bridge. On each side of the bridge is a sidewalk about six feet in width protected by an outside railing three and one-half feet high. At the west end of the bridge each railing terminates in an upright concrete post three feet nine inches by two feet nine inches and approximately four and one-half feet high. "North bridge" has no superstructure, and, as defendant proceeded west across the bridge, only the railings and concrete posts could obstruct to any extent his view of the areas to the north and south of the west end of the bridge. The highway itself was clear of traffic at the time of the accident.

Plaintiff had been playing in a park area directly north of the highway at the west end of the bridge, and apparently he was crossing the highway from north to south on his way home when he was struck by defendant's car. Defendant was the only witness to the accident. He testified that he was proceeding across the bridge in his car at 15 miles per hour on the morning of the accident and that he had a clear view of the highway, which was clear of traffic. He said that he first saw plaintiff as he was running south across the highway about eight or ten feet in front of the car at about the

middle of the westbound lane of travel; that he then slammed on his brakes; but that his car kept on moving as it skidded on the icy and frosty surface of the highway. The car struck plaintiff, and, when defendant stopped, the boy was lying six or eight feet in front of the automobile. Defendant testified that, after his car hit plaintiff, he picked him up in his arms and that the boy asked him why he had not stopped, to which he replied that he could not "stop that quick." He said that plaintiff then told him that he had better call a policeman and that he said: "I am the policeman." He further said that he told the boy that he had not seen him. There is no marked pedestrian crossing at the west end of the bridge where plaintiff was crossing the highway, but there is evidence that many school children and adults cross at that point and that defendant knew of that practice.

After the accident, defendant put the boy in his car and drove to a doctor's clinic. Agnes Watts, plaintiff's mother, was called to the clinic and talked to her son. At the trial plaintiff's counsel offered to prove, through Mrs. Watts, that within 15 minutes of the accident plaintiff told his mother at the clinic that he looked to the right and left and that he was out in the street and the man ran him down. Defendant's objection to the offer of proof was sustained on the ground that the boy's statement to his mother was only a restatement of his mother's previous instructions for care as a justification for his conduct and was not a spontaneous utterance under the *res gestae* rule. The court in its instructions submitted to the jury the issues of the negligence of defendant and the contributory negligence of plaintiff. The jury returned a general verdict for defendant and noted thereon that "both parties were negligent."

The only questions we need consider on appeal are:

(1) Should the issue of the contributory negligence of a child four years nine months old, injured in an automobile accident, be submitted to a jury in the absence of any evidence of the intelligence, capacity, and experience of the child?

(2) Was the testimony of statements by the injured child to his mother within 15 minutes after the accident regarding the child's

conduct immediately prior to the accident competent and admissible under proper instructions?

■ The question of what age a child must be before the issue of contributory negligence may be submitted to a jury has been a perplexing one in the courts for a long time. Broadly speaking, we have two rules which some of the courts in this country have been following. One is the so-called Illinois rule, and the other is the Massachusetts rule. The general dividing line with reference to the contributory negligence of young children under those rules is as follows: Under the Illinois rule it is held that a child under seven years of age is incapable of contributory negligence. Eckhardt v. Hanson, 196 Minn. 270, 264 N. W. 776, 107 A. L. R. 1, and cases cited; see, Annotation, 174 A. L. R. 1080. Courts following the Massachusetts rule hold that the question of the contributory negli-. gence of a child under seven years of age is for the jury under proper instructions. Eckhardt v. Hanson, *supra,* and cases cited. In the Eckhardt case, this court approved the Massachusetts rule as being the most sound and the one most likely to insure just results.

Our most recent decision on the issue of the contributory negligence of a child is Audette v. Lindahl, 231 Minn. 239, 42 N. W. (2d) 717. In that case this court said that the contention that a child five years old is incapable of contributory negligence as a matter of law is without merit. We held there that the contributory negligence of plaintiff, a five-year-old child, properly was submitted to the jury subject to the instruction that a child of that age is not required to exercise the same degree of care as an adult but only that degree of care which ordinarily would be exercised by a child of that age, experience, and intelligence under the same or similar circumstances. The rule is so well established in this jurisdiction that it will serve no useful purpose to further discuss its supporting authorities. Audette v. Lindahl, *supra;* see, Eckhardt v. Hanson, *supra;* Carlson v. Sanitary Farm Dairies, Inc. 200 Minn. 177, 273 N. W. 665; Squillace v. Village of Mountain Iron, 223 Minn. 8, 26 N. W. (2d) 197.

In the case at bar the court defined negligence as the want of ordinary care or failure to exercise that degree of care which an or-

dinarily prudent person would exercise under the same or similar circumstances. The court further said that that general rule of law applied to both parties in the case but that, in testing the facts of what each one did or failed to do by this rule, proper differentiation must be made between the parties because of age, maturity, and experience. Referring to the application of the rule to plaintiff, the court informed the jury that it could not apply the same standard of an ordinarily prudent person for a child four years and nine months old as it would for a mature person. However, the court said that the law required of a child of even those tender years the use of such reasonable care as a child of his age and mental capacity would use under the same or similar circumstances. The court instructed the jury that the standard of care to be applied to the child was that degree of care commonly exercised by an ordinary boy of his age and maturity.

Plaintiff contends that in the case of adults the law adopts an external objective standard of conduct—that of a reasonable man. Plaintiff argues, however, that the standard of conduct of children is not an objective standard but requires consideration of the experience, intelligence, and capacity of the particular child whose conduct is being scrutinized; in other words, that the standard is only that degree of care which ordinarily would be exercised by a child of that age, experience, and intelligence. It is plaintiff's claim that under the record all that the jury could have considered was the age of the child since it had no other information or evidence as to his experience, intelligence, or maturity. While it is true that his foster mother testified that prior to the accident he was an alert bright boy and in perfect health as far as she knew, there was also testimony by a doctor witness for defendant who examined the boy after he was injured that at times the boy was a little bit retarded, although he seemed perfectly normal and co-operative in answering questions and following instructions.

While it is apparent from the record that the trial court attempted to follow substantially the rule laid down in Audette v. Lindahl, 231 Minn. 239, 42 N. W. (2d) 717, it is our opinion that, before the issue of contributory negligence of plaintiff was submitted, the jury

should have had some information with reference to the experience, intelligence, maturity, training, and capacity of plaintiff. The child did not appear as a witness, and, as far as we can learn from the record, about the only information the jury had with reference to those matters was whatever observations it may have taken of plaintiff when he was around the courtroom. In other words, there was no showing of the qualifications of this particular child, such as experience in crossing streets, the amount of traffic instructions he had received in his home, and his general intelligence, knowledge, or experience, except the reference made by his mother. For example, one child of the same age as another may distinguish, understand, or recognize a danger which the other would not. Environment, locale, and home and school training all may enter into the picture. A child reared in a large city may be alert to, and be perfectly capable of recognizing or avoiding, the dangers of heavy traffic on crowded streets but oblivious to the dangers of complicated farm machinery while visiting his country cousin. On the other hand, a child of the same age and average intelligence reared on a farm may be very keen as to the dangers of a power mower, a tractor, or other farm machinery but not instinctively conscious of traffic and other dangers found in a large urban center.[2]

It is our opinion under the record here that a new trial should be granted so that the jury may be more completely informed as to the experience, training, and intelligence of plaintiff before it attempts to pass on the question of his contributory negligence. This is particularly true of children under kindergarten or school age who have not yet had the opportunity to receive school safety instructions and training.

■ With reference to the second question raised on appeal, plaintiff offered to prove through the testimony of Agnes Watts, the boy's mother, a declaration that the child made to her ten or fifteen minutes after the accident to the effect that he looked to the right and to

---

[2]"* * * A child may be so young as to be manifestly incapable of exercising any of those qualities of attention, intelligence and judgment which are necessary to enable him to perceive a risk and to realize its unreasonable character." Restatement, Torts, § 283, *comment e*.

the left and that he was out in the street and the man ran him down. This offer was made as part of the *res gestae*.

The trial court, in sustaining defendant's objection to the offered testimony, determined that the statement made by the child when confronted by his mother was not a spontaneous utterance so as to qualify its admissibility under the doctrine of *res gestae* but rather a restatement, by way of justification, of his mother's previous instructions for care. In other words, according to the court's memorandum, the utterance was in reality in answer to a question and required closer scrutiny than an uninvited statement or one made to a stranger. It was not ruled out, according to the court, because of the time element but on the ground that under the facts it failed as a spontaneous utterance, citing State v. Gorman, 229 Minn. 524, 40 N. W. (2d) 347.

It is the position of plaintiff that statements or exclamations by a person who is the victim of a collision or other exciting occasion made immediately after the occurrence and declaring the circumstances of it as observed by him may be used to prove the facts asserted. Lambrecht v. Schreyer, 129 Minn. 271, 152 N. W. 645, L. R. A. 1915E, 812; Clark v. Davis, 153 Minn. 143, 190 N. W. 45. Plaintiff further argues that the principal contention by defendant with regard to the admissibility of the claimed *res gestae* statement by plaintiff is that the trial court determined that the statement was made in response to a question by the boy's mother and was characteristic of a child's justification. Plaintiff contends that the offer of proof did not show that the statement was made in answer to a question or that it was in any way invited by the boy's mother or made by way of excuse or justification.

An examination of the record here satisfies us that there is merit to plaintiff's contention. There is no showing that the statement was made by the boy in answer to a question or that it was made by way of justification or excuse or that it was invited by the boy's mother. In the absence of such a showing, it is our opinion that the exclusion of the offer of proof was prejudicial error.

Reversed and new trial granted on all the issues.