David Arthur PETERSON, A Minor, by his next friend and guardian, Elaine Peterson, Appellant,

v.

Oliver R. TAYLOR and B. J. Taylor, Appellees.

No. 65415.

Supreme Court of Iowa.

March 17, 1982.

James R. Cook, Des Moines, for appellant.

Jeff H. Jeffries of Hopkins & Huebner, Des Moines, for appellees.

Considered by LeGRAND, P. J., and HARRIS, ALLBEE, LARSON, and SCHULTZ, JJ.

ALLBEE, Justice.

An unfortunate combination of gasoline, matches and a seven-year-old boy resulted in the lawsuit which underlies this appeal. Badly burned as a result of his experimentation with fire, the minor plaintiff David Peterson, by his mother as next friend, brought a negligence suit against his neighbors, the Taylors, from whose storage shed he obtained the gasoline. The jury returned a verdict for the defendants, and plaintiff appeals.

Evidence at trial showed that the Taylors and the Petersons lived on neighboring small acreages just outside the Des Moines city limits and that David Peterson frequently played with the Taylors' son Greg. On Sunday, August 7, 1977, David and his three-year-old sister Molly stopped at the Taylor place on their way home from another neighbor's house. Finding no one home, David decided to gather some twigs and build a fire on a concrete slab in the Taylors' back yard, using some matches he had taken from his uncle's car earlier that day. When the wind blew that fire out, David "got mad." He then went to the Taylors' storage shed, removed a can of gasoline, opened it, smelled it to confirm that it was gasoline, threw a lighted match into it and stood back to watch the fire come out of the can. When that fire appeared to have died out, he went to the shed, removed a second can of gasoline, and accidentally spilled some of it on his pants. Then he dropped the second can and either lit another match or knocked over the first can which was still flaming inside; in any event, David's gasoline-soaked pants somehow became ignited, and he rolled on the ground to put out the fire. As a result of the incident, David received serious burns on the lower half of his body and superficial burns on portions of the upper half.

The shed from which David removed the gasoline cans was a small brick building with a single wooden door, held shut by a sliding bolt located approximately fifty-seven inches above the ground. When David approached the shed on August 7, the door was bolted as usual, and he stood on his "tippy-toes" to unlatch it. Although David had never been in the shed prior to the day of his injury, he knew the Taylors stored cans of gasoline there.

David also testified that he had been told not to go onto the Taylors' property when they weren't home, and that he knew the Taylors would not have allowed him to enter the shed had they been present. He knew that gasoline would burn and might even explode when ignited with a match. When he put the match into the first gasoline can, he thought about the possibility that he would be burned. His mother testified that David had previously been caught playing with fire on a few other occasions and had been punished and sternly warned about the dangers involved.

Plaintiff presented expert testimony to the effect that David was of average intelligence, that he was mildly hyperactive, and that hyperactive children tend to be somewhat more attracted to playing with fire than other children. The expert also testified that a child having David's characteristics probably would not realize the full extent of the danger involved in playing with matches and gasoline; for instance, he probably would not realize that a gasoline fire cannot be put out with water. The same expert did testify, however, that such a child "would certainly know that he'd get burned" if he played with gasoline and matches.

On appeal, plaintiff presents for our review questions concerning the sufficiency of the evidence of his contributory negligence, the adequacy of the jury instructions, and the denial of a motion to amend his petition. We turn now to those issues.

I. *Contributory negligence.*

A. *Sufficiency of evidence.*

Plaintiff's first argument on appeal is that trial court erred in submitting the question of David's contributory negligence to the jury. He contends that defendants failed to present sufficient evidence to rebut the presumption that a child under the age of fourteen is incapable of contributory negligence. In response to that contention, defendants assert as an initial matter that the presumption referred to by plaintiff is no longer an appropriate part of Iowa negligence law. We agree.

In *Doggett v. Chicago, Burlington & Quincy Railway,* 134 Iowa 690, 696–97, 112 N.W. 171, 173 (1907), this court adopted a presumption that children under the age of fourteen are incapable of contributory negligence, the presumption being conclusive for children under seven and rebuttable for

those between seven and fourteen. A defendant could overcome the rebuttable presumption by showing that the child plaintiff failed to "exercis[e] such care to avoid danger as may fairly and reasonably be expected from persons of [his] age and capacity." *Id.* at 697, 112 N.W. at 173. Although some later cases applied a rebuttable rather than a conclusive presumption to children under seven, *e.g., Raskin v. City of Sioux City*, 198 Iowa 865, 867, 200 N.W. 333, 334 (1924); *Brekke v. Rothermal*, 196 Iowa 1288, 1296–97, 196 N.W. 84, 88 (1923),[1] the rule regarding children between seven and fourteen appears to have remained unchanged since *Doggett. See, e.g., Rosenau v. City of Estherville*, 199 N.W.2d 125, 129 (Iowa 1972); *Webster v. Luckow*, 219 Iowa 1048, 1054, 1056, 258 N.W. 685, 688–89 (1935).

The presumptions adopted in *Doggett* were expressly based upon an analogy to rules regarding the age at which criminal responsibility attaches. 134 Iowa at 695, 112 N.W. at 172. That analogy, however, has come under a good deal of criticism, such as the following:

> Some courts have attempted to fix a minimum age, below which the child is held to be incapable of all negligence. Although other limits have been set, those most commonly accepted are taken over from the arbitrary rules of the criminal law, as to the age at which children are capable of crime. Below the age of seven, the child is arbitrarily held to be incapable of any negligence; between seven and fourteen he is presumed to be incapable, but may be shown to be capable; from fourteen to twenty-one he is presumed to be capable, but the contrary may be shown. These multiples of seven are derived originally from the Bible, which is a poor reason for such arbitrary limits; and the analogy of the criminal law is certainly of dubious value where neither crime nor intent is in question.

W. Prosser, *Handbook of the Law of Torts* 155–56 (4th ed. 1971) (footnotes omitted).

*See also* 2 F. Harper & F. James, *The Law of Torts* § 16.8, at 926 (1956).

■ We further observe that the presumptions based on age became a part of our law at a time when the plaintiff in a negligence suit had the burden of pleading and proving his freedom from contributory negligence. By legislative enactment in 1965, however, the burden of pleading and proving contributory negligence, if any, was assigned to the defendant. 61st G.A., ch. 430, § 1 (1965); *see* § 619.17, The Code 1981. As a result, the rebuttable presumption of a child's incapacity for contributory negligence no longer serves any useful purpose,[2] because the defendant has the burden of proving the child's capacity by a preponderance of the evidence in any event. *Cf. Froman v. Perrin*, 213 N.W.2d 684, 686–88 (Iowa 1973) (abrogating rule that in absence of eyewitness, plaintiff was rebuttably presumed to be free of contributory negligence; aid of presumption no longer necessary now that defendant has burden of proof on issue of plaintiff's contributory negligence). When a rebuttable presumption operates against the party which already bears the burden of proof, instructing on the presumption serves only to confuse the jury and may cause it to "subjectively . . . require a stronger preponderance than in a case where no presumption was present." Note, *Presumptions in Iowa*, 44 Iowa L.Rev. 147, 160 (1958). *See also* E. Cleary, *McCormick's Handbook of the Law of Evidence* § 346, at 829 (2d ed. 1972).

■ Finally, we note that the majority of courts have rejected the arbitrary presumptions of incapacity for contributory negligence based on a child's age. W. Prosser, *supra*, at 156. *See, e.g., Williamson v. Garland*, 402 S.W.2d 80, 82 (Ky.1966); *Mann v. Fairbourn*, 12 Utah 2d 342, 345–46, 366 P.2d 603, 606 (1961). The trend is to view the question of a child's capacity for negligence as an issue of fact. Comment, *Capacity of Minors to Be Chargeable With Negligence and Their Standard of Care*, 57 Neb.L.Rev.

---

1. *See* Committee's "caveat" to Iowa Uniform Jury Instruction No. 2.3 (Civil) (expressing view that an instruction on the conclusive presumption for children under seven is no longer applicable). *But see Law v. Hemmingsen*, 249 Iowa 820, 826, 89 N.W.2d 386, 391 (1958) (because of age of four-year-old plaintiff, no issue as to her contributory negligence).

2. The same cannot be said, of course, for the function performed by the *conclusive* presumption for children under seven; however, that function is to create an arbitrary rule of law that no child under seven is ever capable of contributory negligence, regardless of what the actual facts may show. We deem it unwise to perpetuate such a rule. In any event, as noted earlier, the conclusive presumption has not been consistently applied by this court.

763, 767 (1978). *See, e.g., Mann*, 12 Utah 2d at 346, 366 P.2d at 606 ("The capacity or incapacity of a child [for contributory negligence] is a factual inquiry and the test to be applied is that applicable to any other question of fact.") Under this approach, a particular child's incapacity for negligence may be determined by the court as a matter of law only if the child is so young or the evidence of incapacity so overwhelming that reasonable minds could not differ on that issue. *Id.*; 57 Neb.L.Rev., *supra*, at 767; *see* W. Prosser, *supra*, at 156; *Restatement (Second) of Torts* § 283A comment b (1965). If reasonable minds *could* differ, the question of the child's contributory negligence is submitted to the jury with instructions to apply a standard of care similar to that set forth in § 283A of the *Restatement, supra*:

> If the actor is a child, the standard of conduct to which he must conform to avoid being negligent is that of a reasonable person of like age, intelligence, and experience under like circumstances.

In applying this standard, the jury must initially make a subjective determination of the particular child's capacity to perceive and avoid the specific risk involved, based on evidence of his age, intelligence and experience. 2 F. Harper & F. James, *supra*, § 16.8, at 924–25 (1956).

■ We have articulated a standard of care for children similar to that in the *Restatement, see, e.g., Ruby v. Easton*, 207 N.W.2d 10, 20 (Iowa 1973) ("standard of reasonable behavior of children of similar age, intelligence and experience"); *Rosenau*, 199 N.W.2d at 129 (same); however, that standard has been applied in conjunction with presumptions of incapacity where the child was below the age of fourteen. *See, e.g., Webster*, 219 Iowa at 1056, 258 N.W. at 689; *Brekke*, 196 Iowa at 1296–97, 196 N.W. at 88. We now bring Iowa in line with the majority position by holding that we no longer recognize any presumptions regarding the capacity of children for negligence or contributory negligence; rather, the question of a particular child's capacity is an issue of fact to be determined on the basis of evidence of the child's age, intelligence and experience, as outlined in the preceding paragraph. This holding shall be applicable to all actions in which a final judgment has not been entered on the date

of the filing of this opinion, and to adjudicated cases in which error was preserved and the time for appeal has not expired.

■ Having established the appropriate legal framework, we return to plaintiff's contention that there was insufficient evidence for the issue of his contributory negligence to be submitted to the jury. Plaintiff argues that defendants had the burden of establishing the appropriate standard of care by which David's actions should be judged, and that they failed to meet that burden as a matter of law. Specifically, he asserts that evidence at trial showed David was generally a normal seven-year-old child, and that defendants presented no evidence that a normal seven-year-old child would have acted differently than David did. Therefore, it is argued, there was no evidence from which the jury could find that David did not exercise that degree of care which may be expected of a seven-year-old child. We believe this argument reflects a basic misunderstanding concerning the evidentiary showing which must be made in regard to the standard of care for children.

In applying the standard of care, as noted above, the jury's first inquiry is a subjective one: What was the capacity of this particular child—given what the evidence shows about his age, intelligence and experience—to perceive and avoid the particular risk involved in this case? Once this has been determined, the focus becomes objective: How would a reasonable child of like capacity have acted under similar circumstances? The particular child in question can be found negligent only if his actions fall short of what may reasonably be expected of children of similar capacity. *See* 2 F. Harper & F. James, *supra*, § 16.8, at 924–25; Shulman, *The Standard of Care Required of Children*, 37 Yale L. J. 618, 625 (1928).

Regarding the subjective inquiry, there must be evidence adduced at trial concerning the child's age, intelligence and experience so that the jury may determine the child's capacity, if any, to perceive and avoid the risk. *Watts v. Erickson*, 244 Minn. 264, 268–69, 69 N.W.2d 626, 629–30 (1955). We find there was ample evidence of that nature in this case, and the evidence was not such that David could be found incapable of contributory negligence as a matter of law. Plaintiff appears to com-

plain, however, that no witness testified that a reasonable child of like capacity would not have acted as plaintiff did in this case. We hold that such testimony need not, and indeed may not, be presented. Determining how a reasonable person would have acted under the circumstances is clearly the function of the jury. The "reasonable child" inquiry differs from the "reasonable man" inquiry only in that the "circumstances" in the former case are broadened to include consideration of the child's age, intelligence and experience. In neither case should a witness, expert or otherwise, be permitted to express an opinion on what a reasonable person would have done in a similar situation, because such testimony would be tantamount to an opinion on whether the person in question was negligent. *See Grismore v. Consolidated Products*, 232 Iowa 328, 361, 5 N.W.2d 646, 663 (1942).

We conclude that there was sufficient evidence for trial court to submit the question of David's contributory negligence to the jury.

### B. *Jury instructions.*

■ Plaintiff next argues that even if there was sufficient evidence to submit the question of his contributory negligence to the jury, trial court did not correctly instruct the jury on that issue. Plaintiff complains that trial court improperly shifted the burden of proof to him by refusing to instruct that by proving his age, plaintiff had made out a prima facie case of freedom from contributory negligence.

It is likely that trial court rejected the "prima facie case" language because, although found in older cases like *Webster v. Luckow*, 219 Iowa 1048, 1056, 258 N.W. 685, 689 (1935), such language is no longer appropriate now that plaintiffs do not have the burden of pleading and proving their freedom from contributory negligence. Trial court did clearly instruct the jury that defendants had both the burden of proving the defense of contributory negligence and the burden of rebutting the presumption of a seven-year-old's incapacity for contributo-

ry negligence. Instruction No. 11, for example, reads in part:

Under the established rules of law prevailing in this state there is a presumed incapacity of contributory negligence in a child under the age of 14 . . . .

The presumption . . . may be rebutted by proof of facts or circumstances from which it can be properly inferred that although a child of less than 14 years, David Arthur Peterson did not use care or caution for his own safety which may be reasonably expected from one of his age, capacity, and experience. It is . . . the burden of the defendants to negate the presumption that he exercised the caution of the ordinary boy of his years.

Although we hold today that the rebuttable presumption referred to in the jury instructions is no longer a part of our law, *see* subdivision A, *supra*, it is plain that its inclusion in the instructions did not prejudice plaintiff. The defendant's burden of rebutting the presumption of a child's incapacity for contributory negligence, as set forth in Instruction No. 11 and supplemented by other instructions, is the same as the defendant's burden of proving a child's contributory negligence as outlined in subdivision A. Plaintiff's contention that the instructions somehow shifted the burden of proof from the defendants to him is without merit.

### II. *Instruction on elements of Restatement § 339.*

■ Plaintiff next contends that trial court erred in refusing to separately instruct the jury on the theory of liability set forth in § 339 of the *Restatement (Second) of Torts* (1965) and adopted in *Rosenau v. City of Estherville*, 199 N.W.2d 125, 137 (Iowa 1972). The elements of this theory are as follows:

§ 339. Artificial Conditions Highly Dangerous to Trespassing Children

A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

*Id.* at 136 (quoting *Restatement, supra,* § 339).

Rather than instructing the jury separately on the elements of this theory, trial court instructed on ordinary negligence, including the following instructions among others:

### INSTRUCTION NO. 8

If you find that reasonably prudent persons would not have stored gasoline in a shed with a door and a latch that could be opened by a child of the age of David Arthur Peterson, and if you find that the defendants created, caused, or maintained an unreasonably hazardous condition or place attractive to children of tender years then such conduct on the part of the defendants constitutes negligence.

### INSTRUCTION NO. 9

Evidence has been introduced in this trial that David Arthur Peterson was present on the property without the permission and consent of the defendants.

Such evidence is not proof that the defendants were or were not negligent, or that the plaintiff was or was not contributorily negligent but should be considered for the limited purpose of assisting you in determining whether or not defendants should have known that persons might be on their property when the defendants were not at home and thus be exposed to harmful conditions, if such conditions existed.

The primary effect of *Rosenau's* adoption of *Restatement* § 339 was to eliminate, in the case of children, the old rule that a landowner's only duty to a trespasser was to refrain from injuring him willfully or wantonly. Otherwise, the basis of the *Restatement* rule "is merely the *ordinary negligence* basis of a duty of reasonable care not to inflict foreseeable harm on another." *Rosenau,* 199 N.W.2d at 136 (quoting *Restatement, supra,* § 339 comment b) (emphasis added). In determining whether such a duty has been breached, "the fact that the child is a trespasser is merely one of the facts to be taken into consideration." *Id.*

The trial court in *Rosenau,* like the trial court here, instructed the jury on negligence but did not instruct separately on the elements of § 339. Nevertheless, this court held that the *Rosenau* instructions, "taken together, set out the essential aspects of Restatement (Second) of Torts § 339." *Id.* at 137. In the case at bar, we likewise find that instructions 8 and 9, along with other instructions, adequately set forth the "essential aspects" of § 339. Although it may have been preferable for trial court to set out the *Restatement* elements in a single instruction, we find no reversible error in the instructions as given.

### III. *Motion to amend.*

At the close of all the evidence, plaintiff's attorney moved to amend the petition to add an allegation that defendants violated a statute requiring gasoline cans to be painted red and clearly marked, *see* § 214A.15, The Code 1977, and that therefore defendants were negligent per se. The reason given for the lateness of the motion was that plaintiff's attorney was not aware that the gasoline cans in defendants' shed were black and unmarked until the young plaintiff mentioned that fact during his testimony at trial.

Trial court denied the motion on two grounds, first, because the color of the cans

was "a material fact that should have been known to the Plaintiff much earlier than the morning of the day the case was going to be submitted," and second, because there was no evidence from which a jury could find that the color of the cans was the proximate cause of David's injury. We need not decide whether the motion was properly denied on the ground of untimeliness, because we agree with trial court's conclusion on the question of proximate cause.

■ Even assuming defendants violated section 214A.15 [3] and that such violation constituted negligence per se, defendants could not be held liable under that theory unless the statutory violation proximately caused David's injuries. *See Robeson v. Dilts*, 170 N.W.2d 408, 412 (Iowa 1969); *Restatement (Second) of Torts* § 288B comment b (1965). There was no evidence at trial that plaintiff did not know the cans contained gasoline or that he did not know gasoline was flammable. As the trial judge noted in denying plaintiff's motion:

> The young man testified that he went to the shed looking for gasoline, opened the can and smelled and recognized it as being gasoline, and I think had the cans been marked as prescribed by the statute they would have only made the young man's search easier, rather than [prevented] his injuries.

■ Iowa R.Civ.P. 88 states that "[l]eave to amend, including leave to amend to conform to the proof, shall be freely given *when justice so requires*." (Emphasis added.) Under the evidence in this case, trial court properly found as a matter of law that the appearance of the gasoline cans, although illegal, bore no causal relationship to David's injuries. Thus, in this case justice did not require trial court to grant plaintiff's motion to amend. It follows that trial court's refusal to instruct the jury on negligence per se was also proper.

**3.** Section 214A.15 states in part:

> A person shall not place gasoline or any other petroleum product for public use having a flash point below 100° F. into any can, cask, barrel or other similar receptacle having a capacity in excess of one pint unless the

Having found no merit in any of plaintiff's assignments of error, we affirm trial court's judgment.

AFFIRMED.

same is painted bright red and is plainly marked with the word "gasoline" or with the warning "flammable—keep fire away" in contrasting letters of a height equal to at least one-tenth of the smallest dimension of such container.