Dennis J. FRATZKE, as Administrator of the Estate of Daniel Joseph Fratzke; Dennis J. Fratzke; and Sandra A. Fratzke, Plaintiffs-Appellants,

v.

Teresa J. MEYER, Defendant-Appellee.

No. 85–1632.

Court of Appeals of Iowa.

Oct. 22, 1986.

Carolyn M. Hinz and Gregory M. Lederer of Simmons, Perrine, Albright & Ellwood, Cedar Rapids, and Morris L. Eckhart, Vinton, for plaintiffs-appellants.

David L. Riley and George Lindeman of Lindeman & Yagla, Waterloo, for defendant-appellee.

Heard by OXBERGER, C.J., and SNELL and SACKETT, JJ.

SNELL, Judge.

On July 16, 1984, the defendant, Teresa Jean Meyer, was driving her car east on Highway 218 in Benton County, Iowa. Just prior to 2:00 p.m., she crested a hill to the east of which a T-intersection is formed by a gravel road leading north from Highway 218. Eleven-year-old Danny Fratzke and ten-year-old Cory McMurrin had ridden their bicycles south on this gravel road just prior to the accident at issue here. Danny Fratzke then rode his bicycle onto Highway 218 and proceeded to travel into the eastbound lane. The car driven by Meyer struck him and Danny was pronounced dead soon after.

This wrongful death action was filed on September 9, 1984. Trial to the jury began on August 26, 1985. On August 29, 1985, the jury returned a special verdict finding Meyer had not been negligent in connection with the accident. Fratzke filed a motion for a new trial alleging, among other grounds, the issues raised here. The motion was denied by the district court and this appeal followed.

Fratzke first contends that the district court erred when it refused to give plain-

tiff's requested jury instruction number 11 regarding the degree of care to be observed by a motorist who observes or should observe a child along the road. That jury instruction states as follows:

> When a child is in plain view upon a street or public road, so that the driver of an automobile or other vehicle sees him, or in the exercise of ordinary care should see him, in time to reduce the speed of such vehicle and have control thereof as to avoid coming into contact with such child, such driver of an automobile or other vehicle cannot assume that such child will not move from a position of safety outside of the pathway of such vehicle and into a place of danger in such pathway, but, on the contrary, such driver must realize that such child may act without any care or may suddenly and unexpectedly leave a place of safety and move into a place of danger in the pathway of such vehicle. The degree of care which a driver is required to exercise in this situation is commensurate with the danger which may be presented by the disposition of children suddenly to run out in response to impulse and without the exercise of judgment or caution.

This jury instruction is codified as Iowa Uniform Jury Instruction No. 5.15 and is adopted, essentially verbatim, from *Webster v. Luckow*, 219 Iowa 1048, 1056, 258 N.W. 685, 689 (1935). The district court refused to give this instruction to the jury on the ground that the instruction would diminish the duties which are placed on bicyclists under Iowa Code section 321.234 (1985).

The degree of care mandated of vehicle operators by *Webster* extends to situations in which the child involved was riding a bicycle. *Tuthill v. Alden*, 239 Iowa 181, 30 N.W.2d 726 (1948); *Westham v. Bingham*, 230 Iowa 1298, 300 N.W. 525 (1941). Notwithstanding these cases, Meyer argues that the requested instruction was properly refused for several reasons. First, Meyer argues that the basis for the decision in *Webster* was the inconsistency perceived by the court between the then-existing presumption that children between the ages of seven and fourteen are free from contributory negligence and the instruction given by the trial court in that case to the effect that a driver may presume that a child in plain view will not dart out from a position of safety into the path of a vehicle. From this premise, Meyer contends that since the aforementioned presumptive freedom from contributory negligence was abolished in *Peterson v. Taylor*, 316 N.W.2d 869 (Iowa 1982), the standard of care enunciated in *Webster* is no longer applicable.

The consistency sought in *Webster* was not an academic concern with aligning two abstract legal statements. It was, rather, an attempt at harmonizing the duty of care owed by vehicle operators to children on public streets and roads with the theory underlying Iowa's law of contributory negligence as it applied to youths at that time. That latter theory was based upon the premise that the care and discretion exercised by youths is less than that of mature persons. *Doggett v. Chicago, Burlington and Quincy Ry. Co.*, 134 Iowa 690, 696, 112 N.W. 171, 173 (1907). Given that premise,

> it does not seem quite logical that such a child need not be expected to act as children of like age do act, and that the driver of an automobile, seeing such child upon the street or highway in a position from which it may readily pass into the pathway of the automobile, has a right to assume that such child will act as a person of mature years and will not leave the place of safety in which the motorist sees him.

*Webster*, 219 Iowa at 1054, 258 N.W. at 688. Therefore, the *Webster* court enunciated the duty of care which Fratzke seeks to apply here and Meyer seeks to discard. While we acknowledge the elimination in *Peterson* of the presumption that children between the ages of seven and fourteen are free from contributory negligence, we do not agree that, as a result, the duty of care stated in *Webster* no longer applies.

Nothing in *Peterson* changes the fact that a child, such as the decedent here, may

suddenly and without care move into a place of danger in the pathway of an automobile. This experiential fact, and not the former law of contributory negligence, is what underlies the court's decision in *Webster*. This recognition was the basis for the *Doggett* presumption against youthful contributory negligence as well as the core of the "human considerations" which prompted the decision in *Webster*. *Id*. 258 N.W. at 688. Although it rejected the *Doggett* presumption, the standard adopted by *Peterson* for determining childhood negligence still recognizes age as an important factor in that determination. *Peterson*, 316 N.W.2d at 873; Restatement (Second) of Torts § 283A (1965). It is no less true today than it was when *Webster* was decided that

> it is a part of the very nature of normal and healthy childhood to indulge in pranks and heedless acts without any deliberation and without anything in the act which they may be doing to indicate what they are next going to do, until it is done.

*Webster*, 219 Iowa at 1054, 258 N.W. at 688.

We do not accept Meyer's argument that giving Fratzke's requested instruction would completely negate the decedent's duty to stop at the stop sign involved in this situation. Meyer's duty to anticipate a child's impulsive movements on the highway and a bicyclist's duty to obey the laws of this state, including the duty to stop at stop signs, are separate and independent obligations. They are not mutually exclusive. This is obvious from *Webster* itself, which approved a jury instruction advising the jury that the plaintiff's prima facie case of freedom from contributory negligence

> may be rebutted by proof that the said Clarence John Webster failed to use and exercise the care, discretion and prudence of children of a like age, and that such failure on his part contributed directly to his injury and death.

*Webster*, 219 Iowa at 1056, 258 N.W. at 689. Although today we deal with comparative fault rather than contributory negli-

gence, *Goetzman v. Wichern*, 327 N.W.2d 742 (Iowa 1982), and no longer employ the *Doggett* presumption, *Peterson*, 316 N.W.2d at 873, there is nothing embodied in the standard of care by which Meyer and other motorists' actions are to be judged that excludes a finding of negligence on the part of a child such as the decedent here. Consequently, we also dismiss Meyer's argument that giving Fratzke's proposed instruction would be tantamount to instructing the jury that the decedent could not be found negligent because he was under fourteen years of age.

Also without merit is Meyer's argument that giving the instruction at issue here would impose an absolute, strict liability standard on the driver of a vehicle. The proposed instruction merely states a standard of care for motorists in a particular situation. If that standard of care is adhered to, no liability attaches. Nothing about the instruction suggests an application of strict liability. Nor is the requested instruction inconsistent with Meyer's right to assume that others using the highway will obey the law, encapsulated in jury instruction number 12 given in this case. That right is not absolute and, as stated in instruction number 12, extends only until the driver "knew, or in the exercise of ordinary care, should have known, otherwise." The requested instruction details an exception to that right where the driver should have known otherwise. Neither are we persuaded that the proposed instruction was substantially covered by other instructions given to the jury.

■ Accordingly, we hold the cases that applied *Webster* to situations where the child involved was riding a bicycle are still the law of this state and mandate that the Fratzkes' requested jury instruction be given if the evidence presented so warrants. We think that it does.

■ Parties to a lawsuit have a right to have a legal theory submitted to the jury so long as it is supported by the pleadings and by substantial evidence. *Carter v. Wiese Corporation*, 360 N.W.2d 122, 132 (Iowa Ct.App.1984). In determining wheth-

er a jury question is raised, the evidence must be viewed in the light most favorable to the party having the burden of proof. *Coppola v. Jameson*, 200 N.W.2d 877, 879 (Iowa 1972). If reasonable minds can differ on the issue, it is for the jury to decide. *Id.* We are convinced that in the present case there was sufficient evidence to allow the jury to find that Danny Fratzke or Cory McMurrin was in plain view such that, in the exercise of ordinary care, Meyer should have seen them in time to reduce the speed of her car and have sufficient control of her car to avoid hitting them. Accordingly, the district court was obligated to give Fratzke's requested jury instruction. It was prejudicial error not to do so. *Doser v. Interstate Power Company*, 173 N.W.2d 556, 559 (Iowa 1970).

Fratzke also contends that the district court abused its discretion in admitting certain testimony over a hearsay objection. We note initially that the admission of hearsay evidence is presumed to be prejudicial error unless the contrary is affirmatively established. *Madison v. Colby*, 348 N.W.2d 202, 204 (Iowa 1984).

At trial, the district court allowed Deputy Sheriff Randall Forsyth to testify over objection to statements made by Cory McMurrin at the accident scene. The statements related a conversation that had occurred between McMurrin and the decedent immediately preceding the accident as well as independent statements made by McMurrin to Forsyth. Deputy Forsyth testified as follows:

A. He told me that they had been out to the park. They had ridden their bicycles back from the park, stopped at Bill's Body Shop where they stopped to get a drink. It was pretty warm that day, I believe in the lower eighties. The sun was shining. They rode up to the corner. At that point Danny said to Cory, "Hurry up, there is a car coming." And Cory's reply was, "Don't go." And Danny replied back, "I will meet you on the other side." And Cory then stated that the car was about at the Bill's Body Shop sign and he said, "I don't believe he saw the car coming that hit him. The car was real close when he pulled out."

This testimony presents us with an issue of hearsay within hearsay, *see In re Estate of Poulos*, 229 N.W.2d 721, 727 (Iowa 1975). Accordingly, both the conversation between the decedent and McMurrin and the conversation between McMurrin and Forsyth must be admissible for us to affirm the district court's ruling. *Id.* With respect to the conversation between McMurrin and the decedent, we believe the statements were either not offered to prove the matters asserted in them, and were consequently not hearsay, or come within recognized exceptions to the rule against hearsay. The decedent's statement, "Hurry up there is a car coming" was, we believe, offered not to show that there was a car coming but, rather, to show that the decedent knew the car was coming. As such, we think this statement is not hearsay. Even were we to find it to be hearsay, we believe it would be covered by either Iowa R.Evid. 803(3), which excepts from the general prohibition of hearsay statements "of the declarant's then existing state of mind," or Iowa R.Evid. 803(1), which allows into evidence statements "describing or explaining an event or condition made while the declarant was perceiving the event or immediately thereafter." Similarly, we do not think McMurrin's comment, "Don't go," was offered to prove the truth of the matter asserted. Rather, it was offered to prove that the decedent had been warned against proceeding. Accordingly, we think this comment is outside the definition of hearsay. Finally, with respect to the decedent's comment "I will meet you on the other side," we think, assuming *arguendo* its proper classification as hearsay, it falls safely within the Iowa R.Evid. 803(3) exception discussed above, as a statement of decedent's intent.

With respect to McMurrin's discussion with Deputy Forsyth, Meyer contends the conversation comes within the rule 803(1) exception for present sense impressions. The Supreme Court of Iowa first recognized the present sense exception,

now embodied as Iowa Rule of Evidence 803(1), in *State v. Flesher*, 286 N.W.2d 215 (Iowa 1979). That rule excepts from the general prohibition of hearsay statements "describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." Iowa R.Evid. 803(1). The underlying theory of this exception is that substantial contemporaneity of event and statement negate the likelihood of deliberate or conscious misrepresentation. Advisory Committee Note, Fed.R.Evid. 803 (cited with approval in Iowa R.Evid. 803(1) Committee Comment); *Flesher*, 286 N.W.2d at 217. "Moreover, if the witness is the declarant, he may be examined on the statement. If the witness is not the declarant, he may be examined as to the circumstances as an aid in evaluating the statement." Advisory Committee Note, Fed.R.Evid. 803 (cited with approval in Iowa R.Evid. 803(1) Committee Comment); *Flesher*, 286 N.W.2d at 217. The exception recognizes that in many, if not most, instances precise contemporaneity is not possible and allows for a slight lapse between event and statement. Advisory Committee Note, Fed.R. Evid. 803 (cited with approval in Iowa R.Evid. 803(1) Committee Comment). McCormick, in his treatise on evidence, argues that the phrase "immediately thereafter" should be "interpreted to mean a time within which, under the conditions, it is unlikely that the declarant had an opportunity to form a purpose to misstate his observations...." McCormick, Evidence, § 298 at 710–11. In the present situation, Deputy Forsyth testified that the time lapse between the accident and his interview with McMurrin was "[p]robably about 15 to 20 minutes." Given the circumstances surrounding the conversation, we think that the statements made by McMurrin to Forsyth were substantially contemporaneous with the accident and therefore come within the ambit of the present sense exception to the rule against hearsay.

■ Finally, Fratzke contends that the district court erred in failing to give Meyer's requested jury instruction regarding the irrelevance of insurance. Fratzke argues this instruction was necessary to counteract the suggestion allegedly made by Meyer's counsel during closing argument that Meyer was uninsured and would therefore be personally liable for any judgment rendered in the case. Final arguments were not recorded, but a record was made in chambers concerning the matter. Although the respective counsels disagree on the content of the statements and the inferences suggested thereby, Meyer's counsel agreed that "to the best of my recollection I did say it would come in the form of a judgment against Teresa Meyer and she is the only person in the world here." In defending his jury argument during the in-chambers discussion, Meyer's counsel said:

> Well, your Honor, she is personally liable. The fact of the matter is she is the only person sued. The insurance company is not a party and she chooses to satisfy her judgment by contract through a liability insurance policy, that's why it's irrelevant and immaterial because that's a matter of contract between her and her insurance company, but if these people would get a judgment for one dime against her she is personally liable.

■ We think the defendant's argument to the jury could reasonably be taken to imply that the defendant is uninsured. As such, the argument is objectionable by virtue of *Laguna v. Prouty*, 300 N.W.2d 98, 101 (Iowa 1981). Immediately following the in-chambers discussion with counsel, the district court admonished the jury as follows:

> Ladies and gentlemen, you are admonished not to draw any inference whatsoever from the last statement that Mr. Riley made in his argument. Thank you.

Fratzke contends that this statement is not sufficiently specific as to the irrelevancy of insurance and that, in addition to a more specific admonition, an instruction should have been given on the issue. In light of our reversal of this case, we need not decide this point. However, we assume counsel for defendant will not repeat this argument or its substance. Additionally, as said by the Supreme Court of Iowa in *Price*

*v. King,* 255 Iowa 314, 122 N.W.2d 318 (1963):

> It would be far better practice to routinely tell a jury by proper instruction that whether or not any party has any kind of insurance has nothing whatsoever to do with the issues to be decided by the jury. Such is the law and in the administration of justice the truth is more effective than mystery. Such an instruction should also warn the jury against speculation as to the existence, kind or amount of insurance coverage.

255 Iowa at 321, 122 N.W.2d at 323.

We reverse the judgment of the district court and remand for a new trial.

REVERSED AND REMANDED.

OXBERGER, C.J., concurs.

SACKETT, J., dissents.

SACKETT, Judge (dissenting).

I dissent.

I cannot agree with the majority because I fail to find substantial evidence in the record to support a finding Danny Fratzke was in plaintiff's plain view just prior to the accident.