**2016 UT App 58**

## THE UTAH COURT OF APPEALS

ELIZABETH BOL,
Appellant,

*v.*

RICHARD J. CAMPBELL,
Appellee.

Memorandum Decision
No. 20141133-CA
Filed March 24, 2016

Third District Court, West Jordan Department
The Honorable Barry G. Lawrence
No. 130402403

Leonard E. McGee and Peter R. Mifflin, Attorneys
for Appellant

Julianne P. Blanch, Attorney for Appellee

JUDGE GREGORY K. ORME authored this Memorandum Decision,
in which JUDGE J. FREDERIC VOROS JR. and SENIOR JUDGE RUSSELL
W. BENCH concurred.[1]

ORME, Judge:

¶1      Elizabeth Bol, acting on behalf of her minor child (Child),
brought suit against Richard J. Campbell because of his
involvement in a traffic accident in which Child was injured. Bol
alleged that Campbell's negligence was the predominant cause
of the accident. Following trial, a jury concluded that Child was
eighty percent responsible for his own injuries, thus denying Bol
the relief she sought. *See* Utah Code Ann. § 78B-5-818(2)

---

1. Senior Judge Russell W. Bench sat by special assignment as
authorized by law. *See generally* Utah R. Jud. Admin. 11-201(6).

(LexisNexis 2012). Bol raises various challenges to the jury instructions and to the adequacy of the evidence Campbell introduced to establish Child's standard of care, including the lack of expert testimony. Because we conclude the trial court did not err, we affirm.

¶2     Child, a Sudanese refugee, was raised in a United Nations refugee camp in Kenya. In the camp, there was no running water, electricity, or vehicular traffic nor were there paved roads or traffic lights. When Child was twelve, his family was granted residency in the United States and relocated to Utah.

¶3     Some four months later, after leaving the local public library where Child was studying with his older sister, Child came to a road he needed to cross in order to catch a bus. It was dark, and Child was wearing dark clothing while riding a black bicycle that lacked reflective tape or lights, in violation of Utah law. *See* Utah Code Ann. § 41-6a-1114 (LexisNexis 2010). On cross-examination during trial, Bol acknowledged that Child had been taught "that it was dangerous to cross the road in front of a car because a moving vehicle is dangerous." Child testified at trial that he was aware of the danger posed by moving cars and that he knew to look both ways before crossing the street, but he also testified that on this occasion he elected to cross the street without looking because he saw his older sister look both ways before entering the roadway. Child believed he would be safe because she had looked both ways, and he was confident she would not cross unless it was safe to do so. Unfortunately, Child's assumption was incorrect, and Campbell's car struck Child.

¶4     Bol sued Campbell, alleging that Campbell's negligence caused the accident. Without disputing Child's claimed damages, Campbell alleged that "[Child]'s comparative fault was the principal cause of the collision." At trial, the jury was presented with testimony from Child, Bol, Child's sister, Campbell, a bystander, two accident reconstructionists, a police officer, and Child's doctor. Child testified as to his age,

education, prior experience with automobile traffic, and lack of knowledge of Utah traffic laws and ordinances. He also gave an account of how the accident occurred and the extent of his injuries.

¶5 At the close of Campbell's case, Bol moved for a directed verdict on the issue of comparative fault as raised by Campbell, arguing that Campbell "had failed to present evidence regarding the scope of [Child's] duty of care." Thus, Bol argued, the question of comparative fault should not be presented to the jury. The trial court denied Bol's motion.

¶6 The jury thereafter received instruction on the principles of comparative fault; the requirements of various traffic safety statutes and ordinances, including an explanation that the violation of those statutes could be considered evidence of negligence; and the proper standard of care against which the conduct of a minor in Child's age group should be measured in determining negligence. Following a jury verdict that Child was eighty percent responsible and Campbell twenty percent responsible for the accident, Bol moved for a judgment notwithstanding the verdict. The trial court denied Bol's motion. Bol then brought this appeal.

¶7 Bol first claims that the jury instruction on the comparative fault of children in negligence cases was erroneous because Campbell did not present evidence, apart from the cross-examination of Child, establishing the applicable standard of care. "Claims of erroneous jury instructions present questions of law that we review for correctness," without deference to the trial court. *State v. Jeffs*, 2010 UT 49, ¶ 16, 243 P.3d 1250.

¶8 In Utah, evidence of a statutory violation may be used as prima facie evidence of negligence, "'subject to justification or excuse if the evidence is such that [a justification or excuse] reasonably could be found.'" *Hansen v. Eyre*, 2005 UT 29, ¶ 12 n.4, 116 P.3d 290 (quoting *Child v. Gonda*, 972 P.2d 425, 432 (Utah 1998)). The Utah Supreme Court, in *Morby v. Rogers*, 252 P.2d 231

(Utah 1953), considered whether this rule ought to apply to children between the ages of seven and fourteen.[2] *Id.* at 233–35. After extensively reviewing the subject, the Court concluded that "[i]f the violation of a statute by a child is found to evidence less care than that which ordinarily could be expected of a child of the same age, intelligence, knowledge, and experience, he could be held contributorily negligent." *Id.* at 235.[3] Thus, a child may

---

2. The applicable standard of care for a child is governed largely by the age of the child. *See Nelson v. Arrowhead Freight Lines*, 104 P.2d 225, 228 (Utah 1940).

> Ordinarily a child under seven years of age is conclusively presumed not guilty of contributory negligence. Between the ages of seven and fourteen, in the absence of [a] showing to the contrary, [a child] is generally assumed not to have the same consciousness of danger and the same judgment in avoiding it as an adult. Above the age of fourteen, in the absence of a showing to the contrary, [a child] is generally charged with having attained that development which imposes upon him the same degree of care as an adult.

*Id.* While not at issue in this case, there is some doubt as to the state of the law regarding children under the age of seven. *Compare Mann v. Fairbourn*, 366 P.2d 603, 606 (Utah 1961) (concluding that the *Nelson* court's pronouncement that children "under seven years of age [are] conclusively presumed not guilty of contributory negligence" is dicta), *with Kilpack v. Wignall*, 604 P.2d 462, 465–66 (Utah 1979) (recognizing that "a young child is generally presumed to be incapable of contributory negligence," relying on the language of *Nelson*).

3. Although *Morby* applies the rule in the context of contributory negligence—which is no longer the law of this state, *see* Utah Code Ann. § 78B-5-818(1) (LexisNexis 2012)—*Morby* remains precedential on the use of a proven violation of a civil statute as

(continued…)

be found comparatively negligent for the unexcused violation of a statute if the child "evidence[d] less care than that which ordinarily could be expected of a child of the same age, intelligence, knowledge, and experience." *Id.*

¶9    This is so because any other rule might work to undermine the protected status of children under negligence law.[4] In short, we agree with Bol that the proper standard for the trial court to apply, and with which to instruct the jury, was that

---

(…continued)

evidence of juvenile negligence in the context of contributory negligence's descendant, comparative negligence. *See, e.g.*, *Meese v. Brigham Young Univ.*, 639 P.2d 720, 725–26 (Utah 1981) (explaining that various aspects of the contributory negligence doctrine apply in the context of comparative negligence); *Critchley v. Vance*, 575 P.2d 187, 189 (Utah 1978) (noting that where "contributory negligence was [once] a complete defense" to negligence liability, the effect of Utah's comparative negligence law is that "contributory negligence is now only a partial defense").

4. Ordinarily, a child is held, as in the instant case, to a standard of care that takes into account his or her age, intelligence, knowledge, and experience. *Morby v. Rogers*, 252 P.2d 231, 235 (Utah 1953). Where the child is engaged in an adult activity, however, the child is held to an adult standard. *See Summerill v. Shipley*, 890 P.2d 1042, 1044–45 (Utah Ct. App. 1995). Despite Bol's argument to the contrary, it is clear that neither Campbell nor the trial court suggested or argued that bike riding, even at night, is an adult activity such that Child should be held to the adult standard of care. Rather, the trial court's reference to an "objective standard" is a reflection of the fact that once the jury evaluates a child's *subjective* capacity, it must next decide whether the child's decisions made in light of that capacity were *objectively* reasonable. *See infra* ¶ 10.

of a partly subjective standard based on the level of care that "ordinarily could be expected of a child of the same age, intelligence, knowledge, and experience." *Morby*, 252 P.2d at 235. The closer question is how specific courts must be in considering a particular child's experience.

¶10    To establish the appropriate standard of care applicable to a child, a two-part inquiry is necessary. First, the jury must determine whether the child had the subjective capacity—given his or her "age, intelligence, knowledge, and experience," *id.*—to effectively avoid the risk at issue, *see Peterson v. Taylor*, 316 N.W.2d 869, 873 (Iowa 1982); 57A Am. Jur. 2d *Negligence* § 183 (2004). It necessarily follows that "there must be evidence adduced at trial concerning the child's age, intelligence and experience so that the jury may determine the child's [subjective] capacity, if any, to perceive and avoid the risk." *Peterson*, 316 N.W.2d at 873. "Likewise to be taken into account are the circumstances under which the child has lived, and his experience in encountering particular hazards, or the education he has received concerning them." Restatement (Second) of Torts § 283A cmt. b (Am. Law Inst. 1965). Second, having considered the subjective factors, the jury must objectively determine "how . . . a reasonable child of like capacity [would] have acted under like circumstances." 57A Am. Jur. 2d *Negligence* § 183 (2004) (citing *Peterson*, 316 N.W.2d at 873). This is because "[i]f the child is of sufficient age, intelligence, and experience to understand the risks of a given situation, he is required to exercise such prudence in protecting himself . . . as is common to children similarly qualified." Restatement (Second) of Torts § 283A cmt. b (Am. Law Inst. 1965). Thus, "[t]he particular child in question can be found negligent only if his or her actions fall short of what may reasonably be expected of children of similar capacity." 57A Am. Jur. 2d *Negligence* § 183 (2004) (citing *Peterson*, 316 N.W.2d at 873).

¶11    Although Bol is correct that Campbell did not regard it as his burden to establish Child's age, intelligence, knowledge, and

experience under the circumstances, the jury had before it extensive evidence of Child's "age, intelligence and experience" and was thus well-situated to analyze Child's "capacity, if any, to perceive and avoid the risk" of harm occasioned by crossing the street into oncoming traffic. *See Peterson*, 316 N.W.2d at 873. Although "the circumstances under which [Child] has lived, and his experience in encountering particular hazards" could have left him ill-prepared to navigate the busy streets of Salt Lake City, Child instead testified that notwithstanding his limited experience in the United States at the time of the accident, he was both aware of the danger posed by moving automobiles and able to guard against that danger by watching for cars before entering the street. *See* Restatement (Second) of Torts § 283A cmt. b. (Am. Law Inst. 1965). Thus, Child had sufficient experience "to understand the risks of [the] given situation," and given that experience, it was not unfair that the jury was allowed to consider his role and responsibility in the accident as well as whether "he [was] required to exercise such prudence in protecting himself." *See id.*

¶12    Moreover, during the course of the trial, Bol affirmed that she had discussed with Child the dangers of moving vehicles as well as the importance of safely crossing the road, including the need to use crosswalks while doing so. She also indicated that she believed that Child fully understood their discussion and that he was aware of the danger posed by moving vehicles. Child also admitted that he knew it was important to look both ways before crossing. He explained that he did not do so on this occasion because he had seen his sister look both ways before crossing and he figured it was safe to follow her lead. In sum, Bol's evidence was sufficient to show that Child, even given his subjective capacity—his "age, intelligence, knowledge, and experience"—fully realized that oncoming traffic was dangerous, warranting safety precautions known to Child, such as looking both ways before entering the street, even though he was not up to speed on the bicycle safety requirements of section 41-6a-1114 of the Utah Code with which his bicycle was not in

compliance. And there was ample evidence from which the jury could conclude that it was objectively unreasonable for Child not to check for traffic before entering the roadway.[5] This evidence was more than sufficient for the jury to conclude that Child's unreasonable behavior made him primarily responsible for his own injuries.[6]

¶13    Although Bol concedes that "[t]he trial court correctly instructed the jury on the . . . standard of care applicable to [Child]," she claims that the jury instructions conflicted with one another and thus confused the jury such that it was left to devise its own standard of care to apply to Child. "[A]lthough we

---

5. Bol also seems to argue that the "knowledge" element of the duty-of-care standard applicable to children requires actual knowledge of the statute that the child purportedly violated. But regardless of a person's knowledge of the existence of a safety statute, "[i]t is a general rule of Utah law that violation of a safety standard set by statute or ordinance constitutes prima facie evidence of negligence." *Ryan v. Gold Cross Servs., Inc.*, 903 P.2d 423, 426 (Utah 1995). *See also* David G. Owen, *Proving Negligence in Products Liability Litigation*, 36 Ariz. St. L.J. 1003, 1010 (2004) ("[L]iability flows merely from the defendant's breach of statute rather than from demonstrative proof of how the defendant was at fault. That is, a plaintiff may establish a breach of the duty of care without specific evidence showing how the defendant's actions were unreasonable, in how they foreseeably exposed the plaintiff to an undue risk of harm.").

6. Bol's own expert acknowledged that "[i]f [Child] never looked before crossing he's got a lot of contribution to this accident" and conceded further that Child's "failure to look could be a cause of the accident." And even Bol's counsel admitted at trial that Child was somewhat negligent, stating, "I think it would be fair and reasonable for you to find that [Child] has some responsibility for causing this accident."

review a court's ruling on a proposed jury instruction for correctness, we look at the jury instructions 'in their entirety and will affirm when the instructions taken as a whole fairly instruct the jury on the law applicable to the case.'" *State v. Maestas*, 2012 UT 46, ¶ 148, 299 P.3d 892 (quoting *State v. Robertson*, 932 P.2d 1219, 1231 (Utah 1997)) (internal citation omitted).

¶14　In light of Bol's concession that the key jury instruction correctly stated the applicable law, and our previous determination that the trial court properly instructed the jury as to both comparative negligence and Child's violations of applicable traffic laws, *see supra* ¶¶ 9–12, we conclude that the trial court both properly denied Bol's motion for a directed verdict and properly sent the comparative negligence question to the jury.

¶15　Finally, Bol suggests that Campbell may have been required to introduce expert testimony as to how a reasonable child raised in Child's actual circumstances—in an African refugee camp with little or no automobile traffic—would act crossing an American street at night. But this suggestion is not developed much beyond the mere making of it. Bol observes that there are various standards of care applicable to doctors, engineers, and other professionals. She then points out that "[t]hese particular standards of care . . . typically also require expert testimony." We are apparently left to infer that a similar rule should apply to a child's standard of care. This argument is inadequately briefed, and we decline to address it further. *Smith v. Smith*, 1999 UT App 370, ¶ 8, 995 P.2d 14 ("An issue is inadequately briefed when 'the overall analysis of the issue is so lacking as to shift the burden of research and argument to the reviewing court.'") (quoting *State v. Thomas*, 961 P.2d 299, 305 (Utah 1998)).

¶16　Affirmed.

―――――――――