STATE of Iowa, Appellee,

v.

Jeremy ATWOOD, Appellant.

No. 98–1387.

Supreme Court of Iowa.

Nov. 17, 1999.

As Amended on Denial of Rehearing Dec. 8, 1999.

Alfredo Parrish and Andrew Dunn of Parrish, Kruidenier, Moss, Dunn & Montgomery, L.L.P., for appellant.

Thomas J. Miller, Attorney General, Sheryl A. Soich, Assistant Attorney General, Denver D. Dillard, County Attorney, and Harold L. Denton, Assistant County Attorney, for appellee.

Considered by McGIVERIN, C.J., and LARSON, CARTER, CADY, and ANDREASEN,* JJ.

LARSON, Justice.

Jeremy Atwood was convicted of two counts of vehicular homicide under Iowa Code section 707.6A(1)(b) (1997). He appealed, challenging the district court's refusal to change venue and several rulings made during trial. His main challenge, however, arises out of the trial court's handling of an anonymous telephone threat during the trial. We treat this last issue first.

## I. *The Threat.*

This case, which involved the deaths of two young children who were struck by the defendant's car, evoked strong emotions in the local community. During the trial, on the morning scheduled for final arguments, a receptionist in the public defender's office heard from an anonymous caller that the trial participants, including the prosecutor, defense counsel, and jurors, would all be killed unless a certain verdict was returned. The receptionist, understandably shaken, could not remember whether a conviction or acquittal was demanded.

* Senior judge assigned by order pursuant to    Iowa Code section 602.9206 (1999).

The judge delayed closing arguments, originally scheduled for morning, until 1 p.m. However, at 1:15 p.m., without the jury present, the judge announced to the parties and the spectators present in the courtroom that closing arguments would be delayed because of the threatening phone call. The court met with the attorneys and Atwood. The court related the gist of the telephone call and outlined the precautions being taken. The court invited discussion and suggestions from the parties as to what to tell the jury. The court proposed it go to the jury room and tell the jury on the record, in very general terms, that the proceedings were delayed due to the receipt of a threatening phone call. Defense counsel objected to this procedure and moved for a mistrial or a total sequestration of the jurors. Counsel for the defendant, however, did not request to be present in the jury room when the judge spoke to the jurors, and this is the basis for Atwood's ineffective-assistance-of-counsel issue discussed later.

The court overruled the defendant's motions and went to the jury room, with his court reporter. He explained the situation to the jurors, and we set out the full text of the court's remarks later in this division. Immediately after the court's discussion, the court reporter read to the defendant and the attorneys the record of the conversation with the jury. Defense counsel renewed, unsuccessfully, their objection to the procedure. The trial went forward. The parties made their closing arguments the next day, and the case was submitted to the jury, which found Atwood guilty on both counts.

On appeal Atwood renews his complaint about the way the court handled the threat. He argues the court (1) exposed the jury to extrajudicial material, which affected their ability to render an impartial verdict—a violation of the Sixth and Fourteenth Amendments to the United States Constitution and article I, sections IX and X of the Iowa Constitution; and (2) improperly denied the defendant his right to be present during all trial proceedings, thus violating the same federal and state constitutional provisions.

A. *The extraneous material.* In the context of alleged juror misconduct based on consideration of evidence outside the record, we have said "when there is proof that extraneous material has reached the jury room, the party seeking to overturn the verdict must show 'that the misconduct was calculated to, and with reasonable probability did, influence the verdict.'" *State v. Henning,* 545 N.W.2d 322, 324–25 (Iowa 1996) (quoting *Doe v. Johnston,* 476 N.W.2d 28, 35 (Iowa 1991)).

■ This defendant asks that we adopt a per se rule that would make any communication between a judge and jury, outside the presence of the defendant, reversible error. We decline to adopt such a rule. We believe that, for a claim of error to prevail in such a case, the party making such a claim must show a reasonable likelihood that the extraneous evidence influenced the verdict. *Cf. Henning,* 545 N.W.2d at 324–25.

■ One resolution of the problem raised in this scenario would have been for the trial court to simply grant the defendant's motion for mistrial. We do not believe this was required under the circumstances of this case, nor would this resolution be advisable on policy grounds; litigants whose trial was proceeding badly could simply arrange for a threatening phone call and thereby start over again under a mistrial order. The court, we believe, acted properly to alert the jurors, without alarming them and without informing them that the threatened action was contingent on a certain jury verdict. We set out now, in more detail, the court's resolution of the problem.

After the threat was reported to the judge, the judge summarized the content of the call to the extent the receptionist could recall it. In proposing its solution to the problem, the court then stated to the defendant and the attorneys:

Counsel, I'll listen to you before making a final decision, but I tend to think that the most reasonable way to proceed here, and perhaps the fairest from the point of view of both the Defendant and the State, would be for the Court to personally make a brief statement to the jury informing them in general terms that the proceedings were delayed because of a threat that was called in. And I don't think it's necessary to provide them with all the specific details, but I think it is appropriate in view of concerns for their safety as well to provide them with general information indicating that there were general threats made to, essentially, all the participants in this case.

I would intend to tell them that I had referred the call for investigation and taken the actions that I thought were reasonable and appropriate to provide for additional security. And then instruct them that if anyone attempted to have any contact with them regarding the case, they should, as previously instructed, immediately let the Court know about that so that I could take whatever actions were appropriate. And then reconvene and indicate that they would be called upon to hear the case and decide it tomorrow morning at ten o'clock.

It seems to me that it would not be appropriate for me to answer a lot of questions. If they have questions, I probably would just have the reporter note those questions so the State and the Defendant would have an opportunity to be aware of those before I made any kind of a response.

Counsel for the State had no objection to this proposal, but defense counsel did; they moved for a mistrial, which was denied. As proposed, the judge and the court reporter met with the jurors.

We set out the court's statements to the jury in full because the content of that statement is essential to a resolution of the issue raised in this division as well as the following subdivision concerning Atwood's exclusion from that communication. The court stated to the jury:

THE COURT: For the benefit of the record, the Court is visiting with our 14 jurors in this case in our jury conference room.

Ladies and gentlemen, I wanted to explain to you why we're delayed. We made wonderful progress the first six days, and we're a day or two ahead of schedule. But what happened this morning was shortly before we were scheduled to begin our closing arguments there was brought to the Court's attention the fact that an anonymous phone call that was threatening in nature and directed to virtually all of the participants in this trial had been placed. And, obviously, that was something that I then had to deal with.

Unfortunately, this is something that occasionally occurs at the courthouse, not often but once in awhile, and we just have to deal with an issue when it comes up. And I have taken steps that I think are appropriate. Obviously, involved some law enforcement officers to investigate the circumstances. And, in addition, taken some steps to ensure that we have enhanced security during the course of the trial.

And when we come back tomorrow, I wanted to make you aware that I have got our metal detector, and things like that, that are set up, and I'm going to go ahead and use those. We use those fairly often in connection with cases that occur at the courthouse. And I am going to go ahead and set those up and have those operative tomorrow.

One thing I guess I would like to say is, you know, I know this is something that's new to you, but we occasionally have to go down this road. Obviously, if somebody makes a call, even if we believe it is a crank call, we have to react to it appropriately rather than ignore it, which is what I have tried to do here.

And right now we're scheduled to reconvene with closing arguments commencing tomorrow at ten o'clock. Because this all happened we could not make the arrangements that were necessary to go ahead and start arguing the case this afternoon. So that's where we are at this point in time.

I guess one thing that I would like to tell you by way of reassurance is I have been in this district for 25 years, 12 as a lawyer, and 13 as a judge; and although we get calls of this nature from time to time, I'm aware of no occasion in 25 years that I have been around here where anybody has ever followed up in connection with a call of this nature. So I did feel, though, that it's appropriate to make you aware of why you have been sitting up here since ten o'clock since we have tried to minimize occasions when that has occurred during the trial.

Now, I have not yet excused the parties. They're downstairs, and they're waiting for some instructions from the Court just to confirm that we're starting tomorrow at ten o'clock.

If you had any questions, I had indicated to them that I didn't feel it was appropriate for me to respond without reviewing a question that a juror may have had. But if there was anything that you thought you needed to ask the Court at this time, I can make a note of that; and if I can respond, I will. And if it's not something that's appropriate for me to respond to, I hope you would understand that that's the case.

And before we excuse you this afternoon, I do need to double-check with the parties. But anything that anybody wanted to take up with the Court?

(There was no response by any jury member.)

THE COURT: Well, I appreciate very much your patience. Obviously, this is something that was not what I would have planned for your morning this morning, or mine either for that matter. But I've done what I believe it was necessary for me to do, and I'm trying to get all our "ducks in a row" so that we can get this case concluded. So bear with me, I should be able to tell you maybe within 15 minutes or so whether or not you can go on home, and we can get this case to the jury tomorrow morning hopefully.

Okay. All right. Thanks for your patience, jurors.

(Whereupon, at 2:17 p.m., the record was concluded with the jury.)

The defendant does not claim any of the judge's comments were inaccurate or prejudicial. Rather, he claims that, if the court was to discuss the matter with the jury, it should have gone further and inquired of the jurors as to what effect, if any, the threat had on them. To do so, of course, would magnify the event and exacerbate any effect it might have on the jurors. Although the defendant's lawyers voiced their concern that the threat would be reported in the evening news, the jury was admonished, as it had been throughout the trial, that they were to avoid media coverage and conversations with others about the case. The court was entitled to presume the jurors would follow its admonition. *State v. Proctor,* 585 N.W.2d 841, 845 (Iowa 1998). The court's refusal to examine the jurors sua sponte was within its discretion. *See State v. Frank,* 298 N.W.2d 324 (Iowa 1980) (no abuse of discretion in not sua sponte examining jurors regarding effect of trial publicity). We find no error or abuse of discretion in the court's procedure in discussing the matter with the jury.

■■■■ B. *Exclusion of the defendant from the court's meeting with the jury.* Atwood contends that the court, by discussing the matter with the jury in his absence, committed error. A criminal defendant has a right to be present at every stage of the trial, including conversations between the judge, attorneys, and jurors concerning the jurors' ability to be impar-

tial. *State v. Wise,* 472 N.W.2d 278, 279 (Iowa 1991). Prejudice may be presumed if a defendant is absent from such conversation; however, any such presumption can be rebutted under a harmless-error analysis. *Id.* Only under exceptional circumstances is a per se rule of prejudice applied. *State v. Webb,* 516 N.W.2d 824, 830–31 (Iowa 1994).

The court did not refuse Atwood the right to be present for the court's meeting with the jury; the defense did not request to be there (a matter discussed in connection with the claim of ineffective assistance of counsel). The judge advised the parties in advance what he planned to do, and he followed that plan. His comments to the jury were reported verbatim and read to the parties after the meeting. The parties had an opportunity to object both before (as to the procedure being proposed) and afterward (as to the actual content of the judge's remarks). The defendant made no specific objection; he merely demanded a mistrial, which the court properly overruled. Under these circumstances, we find no per se violation of Atwood's constitutional right to be present.

## II. *The Change–of–Venue Motion.*

█ The district court denied Atwood's requests for a change of venue. Our review in such a case is for an abuse of discretion. *State v. Siemer,* 454 N.W.2d 857, 860 (Iowa 1990). Iowa Rule of Criminal Procedure 10(10)(b) requires a district court to change venue or import a jury from another county "[i]f the court is satisfied ... that such degree of prejudice exists in the county in which the trial is to be had that there is a substantial likelihood a fair and impartial trial cannot be preserved with a jury selected from that county...." This case, involving the tragic deaths of two young children, obviously evoked considerable media attention. The most intense coverage began the day after the event, on April 6, 1997. The coverage continued to some extent through April. In May coverage was sporadic, usually spurred by events such as Atwood's initial court appearance and arraignment. After May 1997 news coverage was sparse: one article appeared in August, one in February of 1998, three in March, one in April, and one in May just prior to trial.

The *voir dire* examination of the jury panel is perhaps the best indicator of the degree of pervasiveness in news coverage prior to trial. We have said:

> Exposure to newsworthy events will not alone give rise to a presumption of prejudice. Additionally, to the extent particular jurors may be substantially prejudiced against a defendant, rigorous *voir dire* can be trusted to expose those prejudices.

*State v. Wagner,* 410 N.W.2d 207, 211 (Iowa 1987).

In this case, the parties approved a questionnaire to be completed by potential jurors to assess their suitability as jurors in view of the pretrial publicity, to discern any problems concerning their acquaintance with any of the families involved, and to determine if any potential jurors had problems because of the expected length of the trial. As a result of the questionnaire, six potential jurors out of the sixty were struck for cause. (The specific grounds do not appear in the record.) The attorneys then selected eighteen potential jurors for individual *voir dire* examination. Four were excused because of their familiarity with the participants or their families, five were struck for cause due to fixed opinions or a probable inability to judge the defendant fairly, four were dismissed for reasons such as scheduling conflicts or medical problems, and the remaining five of the eighteen were allowed to remain without objection. The parties then conducted group *voir dire* with twenty-eight potential jurors, seven of whom had earlier been examined individually. Of these twenty-eight, the State was denied one challenge for cause, and the defendant's earlier challenge to one was sustained at this time because of his acquaintance with one of the victims' family. None of the twenty-eight

potential jurors questioned expressed a fixed opinion on Atwood's guilt.

We do not believe the trial court abused its discretion in denying the motion for change of venue. Cases cited by Atwood to support his claim of prejudice are clearly distinguishable; most of them involved gross circumstances and responses on *voir dire* indicating a high percentage of jurors with preconceived notions of guilt.

### III. *The Evidence Rulings.*

■ A. *The excited utterance.* A police officer was allowed over the defendant's objection to relate statements made by Atwood's passenger, Chris Sivertsen, while Sivertsen was a patient in the hospital. The statement was made two or two and one-half hours after the accident. Sivertsen said, "Jeremy jerked the wheel—or steering wheel way too hard and I thought he was mad." Atwood argues that the timing of the statement was too attenuated to make it admissible as an excited utterance, and the circumstances were insufficient to show the declarant was sufficiently excited.

The court ruled the statement admissible, stating:

I think clearly we had an extremely startling event here. We have a serious auto accident with personal injury to the driver and passenger. In addition, it's discovered as well that there are two pedestrians who are killed as part of the factual circumstances. Obviously, we have a number of medical people that came to the scene. . . .

. . . .

. . . I think we have a situation where you have, obviously, continuing stress, and then a statement that's made in a situation where there are a number of medical people present. As I recall, there might be some dispute about how long after the accident occurred, but I think we're talking roughly in the hour to two hour area. The statement, obviously, relates to the event.

■ Under Iowa Rule of Evidence 803(2), "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" is an exception to the hearsay rule. Obviously, an excited utterance must be made under the influence of the excitement of the incident rather than upon reflection or deliberation. *See State v. Shortridge,* 589 N.W.2d 76, 82 (Iowa App.1998).

■ The application of the exclusion lies largely within the discretion of the trial court, which should consider (1) the time lapse between the event and the statement, (2) the extent to which questioning elicited the statements that otherwise would not have been volunteered, (3) the age and condition of the declarant, (4) the characteristics of the event being described, and (5) the subject matter of the statement. *State v. Mateer,* 383 N.W.2d 533, 535 (Iowa 1986).

■ The lapsed time between the accident and the statement in question was at most two and one-half hours. Lapse of time alone will not ordinarily preclude application of the excited-utterance exception. *Id.* (upholding a statement as an excited utterance, though made an hour or more after the event, citing *State v. Galvan,* 297 N.W.2d 344, 346 (Iowa 1980) (which involved two days); *State v. Paulsen,* 265 N.W.2d 581, 586 (Iowa 1978) (two hours); *State v. Stafford,* 237 Iowa 780, 785–87, 23 N.W.2d 832, 835–36 (1946) (fourteen hours)).

The statement in question was elicited by a detective during his questioning of the declarant at the hospital. The officer had been sent to the hospital to determine if Atwood was under the influence of drugs or alcohol and to try to get a statement from Atwood or Sivertsen as to what happened. The officer spoke with Sivertsen for only four to six minutes. He asked Sivertsen what he remembered about the accident, and Sivertsen made the statement in question. Sivertsen was eighteen

years old and was conscious and alert at the time.

We believe the circumstances surrounding this statement supported the trial court's finding of excitement on the part of Sivertsen; he had just been involved in a serious car accident and had apparently seen a child hit the windshield. The subject matter of the statement was clearly probative; he made a statement about the way the driver was operating the car, the main inquiry of the trial.

The court did not abuse its discretion in admitting the testimony as an excited utterance.

■ B. *The accident-reconstruction evidence.* The State introduced the testimony of a sheriff's deputy, Richard Yoder, concerning his reconstruction of the accident and his conclusion that Atwood was traveling over 100 miles per hour at the time of the accident.

■ Accident reconstruction is a proper subject of expert testimony. *Bernal v. Bernhardt,* 180 N.W.2d 437, 438–39 (Iowa 1970). We have said that "we are committed to a liberal view on the admissibility of expert testimony, and we have been quite deferential to the district court in the exercise of its discretion in that area." *Leaf v. Goodyear Tire & Rubber Co.,* 590 N.W.2d 525, 531 (Iowa 1999) (quoting *Mensink v. American Grain & Related Indus.,* 564 N.W.2d 376, 380 (Iowa 1997)).

■ On appeal we will not reverse the trial court's receipt of evidence in the absence of a manifest abuse of that discretion. Only in a clear case of abuse will the admission of such evidence be found to be prejudicial. *Mensink,* 564 N.W.2d at 380 (citing *Iowa–Illinois Gas & Elec. Co. v. Black & Veatch,* 497 N.W.2d 821, 827 (Iowa 1993)).

Iowa Rule of Evidence 702 provides an expansive scope of expert testimony:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

Deputy Yoder has significantly more credentials than the average sheriff's deputy in the area of accident reconstruction. He has received a bachelor of arts degree in criminology. He has attended the Iowa Law Enforcement Academy, a traffic-accident investigation school at Northwestern University, an accident investigation school for technical accident investigators at the law enforcement academy, the accident reconstruction school at the academy, a commercial vehicle accident investigation school, a motorcycle accident reconstruction school, the Midwest Association of Technical Accident Investigators' annual training seminar (eight years), a vehicular homicide investigation school, and the Illinois Association of Technical Accident Investigators training seminar. He has also been nationally certified by the Accreditation Commission for Traffic Accident Reconstructionists and is now a member of that commission. He is a member of the Midwest Association of Technical Accident Investigators, a member of their board of directors for nine years and is a past president of the organization. He has participated in the investigation of approximately 3000 traffic accidents over the past twenty years and has previously testified as an accident reconstructionist. This witness was clearly qualified to testify, and the district court did not abuse its discretion in allowing him to give his opinion.

The defendant presented two accident reconstruction experts of his own. These experts set his speed at between fifty and sixty miles per hour. (The accident occurred in a thirty-five-mile-per-hour zone.) It was the function of the jury, of course, to weigh the conflicting evidence in reaching its verdict. We do not agree with the defendant that, as a matter of law, the jury should have been deprived of the testimony of the State's witness.

## IV. *Sufficiency of the Evidence.*

■■■ Atwood contends the evidence was insufficient as a matter of law to support the verdict because the State failed in its proof of the recklessness component of motor vehicle homicide. Evidence is sufficient if it could convince a rational trier of fact that the defendant is guilty of the crime charged beyond a reasonable doubt. *State v. Veal,* 564 N.W.2d 797, 803–04 (Iowa 1997). The evidence must be viewed in the light most favorable to the State, making any legitimate inferences that may fairly and reasonably be deduced from the evidence. *Id.* at 804.

■■■ A person commits a class "C" felony when he/she "unintentionally causes the death of another by . . . [d]riving a motor vehicle in a reckless manner with willful or wanton disregard for the safety of persons or property. . . ." Iowa Code § 707.6A(1)(b). Reckless driving is composed of three elements: (1) a conscious and intentional operation of a motor vehicle, (2) in a manner that creates an unreasonable risk of harm to others, (3) when this risk is or should have been known to the driver. *State v. Conyers,* 506 N.W.2d 442, 444 (Iowa 1993).

Atwood argues his conduct did not amount to recklessness. However, when viewed in the light most favorable to the verdict, there was clearly sufficient evidence of that element. Atwood was driving down a road with a speed limit of thirty-five miles per hour. His passenger testified they were traveling "very fast" and stated to deputy Yoder that the defendant appeared to be angry. Another witness testified the car had been "going fast." Another witness who lived close to the accident site testified she heard an "extremely loud" motor, which is unusual "if they're driving the speed limit." Another witness heard Atwood's car coming and testified "it seemed like the RPMs got more and more and more and more" and were "climbing real loud." Another witness testified that the "roaring of the engine" was "very loud." Deputy Yoder tes-

tified it was his opinion that Atwood was traveling over 100 miles per hour, and Atwood's own experts set his speed at fifty to fifty-five.

A motorist coming from the opposite direction testified he saw Atwood's car "coming across the centerline into my line of traffic," and seemed to be headed right for him for a period of time. He saw the Atwood car go up onto several lawns and flip. This witness also testified he did not see anything in the road that would have caused Atwood to swerve. Passenger Sivertsen testified he "saw the car going sideways," and felt himself pushed up against the car as the car crossed the centerline. Another witness testified that, when he saw the car, "the wheels jerked and kinda slowly moved and skidded out of control." Several witnesses testified to the car flipping numerous times. The evidence of recklessness was substantial, and the district court properly denied Atwood's motion for directed verdict.

## V. *The Ineffective–Assistance–of–Counsel Claim.*

Atwood complains that he received ineffective assistance of counsel at the trial because his attorney failed to participate in the meeting between the judge and jury concerning the telephone threat and by failing to insist on individual *voir dire* of the jurors concerning the effect of the threat.

■■■ A defendant claiming ineffective assistance must prove, by a preponderance of the evidence, that his trial counsel failed in an essential duty and that prejudice resulted. *State v. Ceaser,* 585 N.W.2d 192, 195 (Iowa 1998). This prejudice must give rise to a reasonable probability that, but for counsel's errors, the results of the proceeding would have been different. *State v. Carrillo,* 597 N.W.2d 497, 500 (Iowa 1999).

Frequently, claims of ineffective assistance of counsel are not resolved on direct appeal but are preserved for postconvic-

tion proceedings to allow the preparation of an adequate record and to allow the attorney charged with ineffective assistance an opportunity to respond to the claim. *State v. Kinkead,* 570 N.W.2d 97, 103 (Iowa 1997). That is the case here. We preserve the issue of ineffectiveness for possible postconviction proceedings.

## VI. *The Requested Instruction.*

 Atwood requested an instruction to the effect that a violation of a rule of the road is not recklessness per se. The court refused on the ground that the substance of that principle was embodied in other instructions. The court observed, and we agree, it is more satisfactory to explain what recklessness is rather than what it is not. The court did not err in denying the requested instruction; the substance was clearly embodied in other instructions.

## VII. *Other Issues.*

Atwood raises two additional issues.

 A. *The spoliation-instruction argument.* He contends the court should have given a spoliation instruction because an investigating officer used a cutting torch to remove a control arm on Atwood's car and thus possibly destroyed exculpatory evidence. He is not specific about what type of evidence might be involved. The rule is that, if the evidence is only potentially exculpatory, a defendant may assert a due process violation only if the destruction was in bad faith. *State v. Craig,* 490 N.W.2d 795, 796–97 (Iowa 1992). This defendant has failed even to show what sort of evidence might have been destroyed and has presented no evidence of bad faith. We therefore reject this argument.

B. *The cumulative error argument.* The defendant asserts a general claim that, when all of the errors are considered together, the cumulative effect deprived him of a fair trial. We reject this argument because we have determined that no errors were committed in the trial court; whether the claims of error are considered

individually or collectively, the defendant is not entitled to a new trial.

**AFFIRMED.**