# IN THE COURT OF APPEALS OF IOWA

No. 15-1431
Filed October 12, 2016

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**DONNY JUNIOR WEST,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Lee (North) County, John G. Linn, Judge.

A defendant appeals from his convictions and sentence. **CONVICTION AFFIRMED, SENTENCES VACATED, AND REMANDED FOR RESENTENCING.**

Mark C. Smith, State Appellate Defender, and Melinda J. Nye, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

Considered by Vogel, P.J., and Doyle and Bower, JJ.

**VOGEL, Presiding Judge.**

Donny West appeals his convictions for reckless use of a firearm, in violation of Iowa Code section 724.30(4) (2013), and possession of a firearm by a felon, in violation of Iowa Code section 724.26(1).  West claims the district court erred in determining two witnesses were unavailable and admitting their depositions, as well as admitting dash cam audio evidence, over his hearsay objections.  West also asserts there was insufficient evidence to establish he intentionally discharged a firearm and the district court failed to provide specific reasons for imposing consecutive sentences.  We conclude the depositions and the audio evidence fell within exceptions to the prohibition of hearsay evidence and there was sufficient evidence to support West's conviction for reckless use of a firearm.  However, we agree the district court did not give specific reasons for imposing consecutive sentences.  Therefore, we affirm West's convictions, but we vacate West's sentences and remand for resentencing consistent with *State v. Hill*, 878 N.W.2d 269, 273–74 (Iowa 2016).

I.      Background Facts and Proceedings

Just after midnight on April 5, 2015, a Fort Madison Police Department officer received a call from dispatch regarding a shooting at a residence in Fort Madison.  The officer arrived at the residence within a minute but quickly pursued a vehicle leaving the residence.  When the officer stopped the vehicle, West was identified as the driver.  A .22 caliber revolver was later discovered in a parking lot along the route West traveled after leaving the residence.

Meanwhile, a second officer arrived at the residence and was called to the back of the house by Melissa Fraise.  Fraise's son had a gunshot wound in his

leg, and he told the officer the gun used was a .22 caliber revolver. The officer described Fraise as "extremely upset" and "frazzled." Fraise told the officer she and West had a disagreement after a night of drinking. Fraise further explained West punched her during a physical altercation, her son had an altercation with West while trying to help Fraise, and she had seen West with a gun during the altercation. Fraise said she did not see West brandish the gun or pull the trigger. When an ambulance arrived to take Fraise's son to the hospital, Fraise moved outside. She spoke briefly with one of the officers, and that conversation was captured by the audio recorder in the officer's patrol car.

On April 15, 2015, the State charged West by trial information with five counts stemming from the incident.[1] On May 27, 2015, West deposed Fraise and her son. Fraise described the incident in substantially the same way she described it to the officers on the night it happened. She believed the shooting was an accident. At the deposition, Fraise's son stated that he came downstairs after hearing Fraise and West arguing and saw Fraise's face was red and swollen. He then got into a physical altercation with West while trying to get him to leave, and he saw West pull a gun out. Fraise's son said the gun went off when "I like tripped or fell or something, but then [West] tackled her and her back hit the space heater in the kitchen. And then the gun went off and it shot my leg. And then [West] ran." Like his mother, he thought the shooting was an accident.

On June 9, 2015, the State subpoenaed Fraise and her son to testify at trial. Fraise told the officer who served the subpoenas that she and her son were

---

[1] The State filed an amended trial information on June 24, 2015, which only included three counts. West was acquitted of assault causing bodily injury.

moving to Florida. The officer told her that it was possible the county attorney could assist with travel arrangements for their return and explained "at length" the consequences of failing to appear. Fraise also discussed the subpoenas and assistance with travel expenses with the assistant county attorney later that day and indicated that she would likely be able to return for trial.

On July 7, 2015, Fraise informed the assistant county attorney her car had broken down, she did not have funds to repair it, and she was not able to return for trial; the assistant county attorney again warned her of the consequences of failing to comply with the subpoenas. Later that day, the State filed a motion to declare the witnesses unavailable. After a hearing, the district court made a preliminary determination the State had "undertaken good faith and reasonable efforts to secure the attendance" of Fraise and her son and the witnesses were unavailable. However, the court ordered the State to continue efforts to secure the attendance of Fraise and her son.

The State purchased two round-trip bus tickets for Fraise and her son and left voicemails on Fraise's phone with instructions to pick them up. Fraise told the assistant county attorney that she received the voicemails but could not leave her other two children in Florida. The tickets were not used, and Fraise and her son did not return for trial. At trial, the State renewed its motion to declare the witnesses unavailable and indicated that it intended to present the witnesses' depositions. West objected, claiming use of the depositions was hearsay and the State had not made reasonable efforts to secure the attendance of the witnesses. West also claimed use of the depositions violated the Confrontation Clause. The district court determined the witnesses were unavailable, the State

made reasonable efforts to secure the attendance of the witnesses, and admission of the depositions did not violate the Confrontation Clause. The depositions were read to the jury. The district court also admitted the dash cam audio of Fraise's statements to the officer over West's hearsay objection.

On July 15, 2015, a jury convicted West of reckless use of a firearm and possession of a firearm by a felon. On August 21, 2015, the district court discussed West's criminal record and concluded confinement was necessary. The court sentenced West to thirty-days imprisonment and a fine on the reckless-use-of-a-firearm charge and five-years imprisonment and a fine on the felon-in-possession-of-a-firearm charge. The court ordered the sentences to run consecutive without further comment. West appeals.

## II. Standard of Review

Evidentiary rulings are reviewed for an abuse of discretion. *State v. Huston*, 825 N.W.2d 531, 536 (Iowa 2013). "[T]he admission of claimed hearsay evidence is reviewed for correction of errors at law." *State v. Shipley*, 757 N.W.2d 228, 231 (Iowa 2008). Claims stemming from the Confrontation Clause are reviewed de novo. *Id.* "Sufficiency of evidence claims are reviewed for a correction of errors at law." *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012). Finally, when a sentence falls within statutory limits, the sentence is reviewed for abuse of discretion. *State v. Seats*, 865 N.W.2d 545, 552 (Iowa 2015).

## III. Deposition Testimony

West argues the district court erred in determining the witnesses were unavailable and determining the depositions fell within the declarant-unavailable exception to the rule prohibiting the admission of hearsay evidence. West also

claims admission of the depositions violated the Confrontation Clause. The State takes the opposite position on both issues.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Iowa R. Evid. 5.801(c). "Hearsay is not admissible unless it falls within one of several enumerated exceptions." *State v. Newell*, 710 N.W.2d 6, 18 (Iowa 2006). The depositions admitted in this case were out-of-court statements asserted for their truth; therefore, the depositions were hearsay and were inadmissible unless they fell within an exception. Our rules of evidence allow the admission of certain hearsay evidence, including former testimony, if the declarant is unavailable as a witness. *See* Iowa R. Evid. 5.804(a), (b)(1). Additionally, the Confrontation Clause permits admission of "testimonial"[2] statements "only if the declarant was unavailable and there had been a prior opportunity for cross-examination." *Shipley*, 757 N.W.2d at 235.

  A.  Unavailability

A witness is "unavailable" when the witness "[i]s absent from the trial or hearing and the proponent of a statement has been unable to procure the witness's attendance by process or other reasonable means." Iowa R. Evid. 5.804(a)(5). Further, "[a] witness is not unavailable for confrontation clause purposes 'unless the prosecutorial authorities have made a good faith effort to obtain his presence at trial.'" *State v. Holland,* 389 N.W.2d 375, 379 (Iowa 1986) (quoting *Barber v. Page*, 390 U.S. 719, 724–25 (1968)). Fraise and her son were

---

[2] Depositions are generally considered testimonial under the formulation "formalized testimonial materials." *See Shipley*, 757 N.W.2d at 235.

absent from the hearing even though the State: (1) obtained subpoenas requiring them to testify, (2) warned Fraise of the consequences of not appearing, (3) offered assistance with travel and accommodation expenses, and (4) provided bus tickets for Fraise and her son. West argues the State should have provided bus tickets for all of Fraise's children or attempted to obtain subpoenas through the Florida court system. The district court found the State undertook reasonable, good-faith efforts to secure Fraise and her son as witnesses. Upon our review of the record, we agree. The State contacted Fraise several times, both before and after she decided to move to Florida. After her move, the State continued the contacts and initiated steps to bring Fraise and her son back to testify at the trial. Fraise's reasons for not accepting the State's offers of assistance do not undercut the State's efforts in securing her presence. We affirm the district court on its finding the witnesses were unavailable.

B.   Former Testimony

"[A] deposition taken in compliance with law in the course of the same or another proceeding" qualifies as former testimony "if the party against whom the testimony is now offered . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." Iowa R. Evid. 5.804(b)(1); *see also Crawford v. Washington*, 541 U.S. 36, 59 (2004) ("Testimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine."). West contends he did not have a similar motive to cross-examine the witnesses because his purpose at the deposition was to

gather evidence, rather than attack the witness's credibility. Yet, the district court noted defense counsel

> did a very good job not in conducting just a discovery deposition to discover the facts, but there's a significant amount of cross-examination, questions where you pushed and probed the witnesses' memory, the use of alcohol and possibly drugs by the adult witness, prior bad acts of the adult witness, also probing questions of the juvenile as far as what he saw, heard, and did.

While West may have preferred to probe the witnesses further at trial, an opportunity and similar motive for cross-examination does not extend "in whatever way, and to whatever extent, the defense might wish." *State v. Tompkins*, 859 N.W.2d 631, 640 (Iowa 2015) (quoting *United States v. Owens*, 484 U.S. 554, 559 (1988)). West's similar motive for cross-examination at the depositions is demonstrated by the substance of his questions, which challenged the perceptions, memories, and overall credibility of the witnesses. Accordingly, we agree with the district court that West had an opportunity and similar motive to cross-examine the witnesses at the deposition.

Because we agree the witnesses were unavailable and West had a prior opportunity and similar motive for cross-examination, we affirm the district court's admission of the depositions.

IV.     Dash Cam Audio

West argues the district court erred in determining dash cam audio of Fraise's description of the events surrounding the shooting fell into the "excited utterance" and "present sense impression" exceptions to the ban on hearsay evidence. The State asserts the court properly determined the recording fell

within an exception to the hearsay prohibition and any error by the district court was harmless.

### A. Excited Utterance

The recording admitted in this case contained an out-of-court statement asserted for its truth; therefore, the recording was hearsay and was inadmissible unless it fell within an exception. *See* Iowa R. Evid. 5.801(c); *Newell*, 710 N.W.2d at 18. Iowa Rule of Evidence 5.803(2) allows the admission of hearsay evidence that qualifies as an excited utterance. The rule defines an excited utterance as: "A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Iowa R. Evid. 5.803(2).

> The application of the exclusion lies largely within the discretion of the trial court, which should consider (1) the time lapse between the event and the statement, (2) the extent to which questioning elicited the statements that otherwise would not have been volunteered, (3) the age and condition of the declarant, (4) the characteristics of the event being described, and (5) the subject matter of the statement.

*State v. Atwood*, 602 N.W.2d 775, 782 (Iowa 1999). The crucial question is whether the statement was "made under the influence of the excitement of the incident rather than upon reflection or deliberation." *Id.*

In this case, the audio contains Fraise's brief statement to the officer pertaining to the shooting. It was made on the street while Fraise's son was receiving medical attention in an ambulance. Fraise can be heard crying and breathing heavily. The district court found "very little time passed" between the shooting and the statement. The statement was made in response to the officer's general questions about what happened.

The time lapse between the shooting and the statement was shorter than those lapses previously upheld for excited utterances. *See id.* at 782 (finding excited utterance with a time lapse of two hours). While Fraise's statement was made in response to questions, the questions were brief, general, and sought a description of events, which Fraise was likely to volunteer.[3] *See State v. Mateer*, 383 N.W.2d 533, 535 (Iowa 1986) (finding an excited utterance where questions "merely anticipated excited descriptions of the incident which the complainant and her girlfriend were bound to volunteer to the officer in any event"). Fraise and her son had just been in a physical altercation that escalated to a shooting; Fraise had been struck; her son had been shot; and she was talking to a police officer while her son received medical attention in an ambulance nearby. Both the audio and the officer's testimony indicate that Fraise was crying and upset when she made the statement. The circumstances taken as a whole support a finding that Fraise's statement was "made under the influence of the excitement of the incident rather than upon reflection or deliberation." *See Atwood*, 602 N.W.2d at 782. Therefore, the district court correctly determined Fraise's statement was an excited utterance.

---

[3] This conversation took place over approximately thirty-five seconds. While the audio quality is poor, Fraise can be heard breathing heavily, crying, and struggling to speak. We discern the conversation as:

> Officer: Hi, can you tell me where he had the car parked? Fraise: Where [West] had his car parked?
> Officer: Uh huh. Fraise: Out back here.
> Officer: Oh, he was out back? Ok, and from here he went where? Fraise: I don't know.
> Officer: I mean, how'd he leave the house? Through the door here or out the front? Fraise: I mean, he, I know that he had the gun in his hands and he said, "I'm leaving; I'm leaving." And I said, "please, please [crying]."
> Officer: Yeah, which way did he go? Out this door? Fraise: Uh huh.

B.    Harmless Error

The State adds that even if the dash cam audio was wrongly admitted into evidence, the admission was harmless.  The wrongful admission of evidence does not require reversal if the error is harmless.  *State v. Walls*, 761 N.W.2d 683, 686 (Iowa 2009).  "To establish harmless error, the State must 'prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'"  *State v. Peterson*, 663 N.W.2d 417, 431 (Iowa 2003) (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)).  We evaluate this standard with a two-step analysis to determine: (1) "what evidence the jury actually considered in reaching its verdict," and (2) based on the weight of the evidence considered, whether the jury's verdict would have been the same without the wrongly-admitted evidence.  *Walls*, 761 N.W.2d at 686–87.

Here, the jury was free to consider Fraise and her son's depositions, the testimony of the officers about the events surrounding the shooting and their investigation, the discovery of the gun, the statements West made to the police, and West's testimony at trial.  Even if the dash cam audio was wrongly admitted, Fraise recounted substantially the same account in her deposition, which we have already determined was properly admitted.  *See Newell*, 710 N.W.2d at 19 ("[E]rroneously admitted hearsay will not be considered prejudicial if substantially the same evidence is properly in the record.").  Because substantially the same evidence as the evidence contained in the dash cam audio was already properly in the record, we conclude any error in admitting the dash cam audio was harmless.

V.      Insufficient Evidence

West claims there was insufficient evidence to support his conviction for reckless use of a firearm.  Specifically, West claims a reasonable jury could not have determined he "intentionally" fired the gun.  The State contends the jury could have properly concluded West intentionally fired the gun.

"In reviewing challenges to the sufficiency of evidence supporting a guilty verdict, courts consider all of the record evidence viewed 'in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence.'"  *Sanford*, 814 N.W.2d at 615 (quoting *State v. Keopasaeuth*, 645 N.W.2d 637, 639–40 (Iowa 2002)).  The jury's verdict will not be disturbed if there was substantial evidence in the record to support it.  *Id.* "Evidence is considered substantial if, when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt."  *Id.*  Further, the jury is free to accept or reject whichever evidence it chooses.  *Id.*

We believe the jury reasonably could have concluded West intended to fire the gun based on West's general behavior, his possession of the gun, and Fraise's son's testimony that West pulled the gun out.  In addition, the State's expert testified the particular type of gun, which most likely was the weapon used, was not the type which would "accidently discharge"; rather, it would require substantial pressure to actually pull the trigger.  Taken together, these facts amount to substantial evidence in the record supporting the jury's verdict; therefore, we conclude there was sufficient evidence in the record to support West's conviction for reckless use of a firearm.

VI.     Sentences

Finally, West asserts the district court abused its discretion in imposing consecutive sentences because the court did not provide specific reasons to justify the consecutive sentences.  The State argues the district court articulated its reason for imposing consecutive sentences when discussing the overall sentencing plan.

Iowa Rule of Criminal Procedure 2.23(3)(d) requires a sentencing court to "state on the record its reason for selecting the particular sentence."  In *Hill*, the Iowa Supreme Court held this rule applied to a court's decision to impose consecutive sentences.  878 N.W.2d at 273–74.  "Sentencing courts should also explicitly state the reasons for imposing a consecutive sentence."  *Id.* at 275. Further, the *Hill* court overruled its own precedent allowing appellate courts to infer the same reasons from a sentencing court's overall sentencing plan.  *Id.* (overruling *State v. Hennings*, 791 N.W.2d 828, 839 (Iowa 2010) and *State v. Johnson*, 445 N.W.2d 337, 343 (Iowa 1989)).

Here, the district court explained in detail its reasons for imposing a sentence of incarceration on West.  However, without the benefit of the *Hill* decision, the court ordered the sentences to run consecutively without further explanation.  In keeping with *Hill*, we vacate West's sentences and remand for resentencing.  *See id.*

VII.    Conclusion

As we conclude the depositions and dash cam audio fell within exceptions to the general exclusion of hearsay evidence and there was sufficient evidence to support West's conviction for reckless use of a firearm, we affirm the district

court's rulings and West's convictions. We vacate West's sentences and remand for resentencing.

**CONVICTION AFFIRMED, SENTENCES VACATED, AND REMANDED FOR RESENTENCING.**