# IN THE COURT OF APPEALS OF IOWA

No. 22-0333
Filed September 27, 2023

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**BARRY BRUCE EVANS,**
Defendant-Appellant.

_____

Appeal from the Iowa District Court for Tama County, Fae E. Hoover, Judge.

A defendant appeals the admission of body camera footage as hearsay.

**AFFIRMED.**

Jeffrey L. Powell of Keegan, Tindal, & Jaeger, PLC, Iowa City, for appellant.

Brenna Bird, Attorney General, and Olivia D. Brooks, Assistant Attorney General, for appellee.

Considered by Greer, P.J., and Schumacher and Badding, JJ.

**GREER, Presiding Judge.**

Barry Evans appeals his conviction for assault causing bodily injury or mental illness, a serious misdemeanor, in violation of Iowa Code sections 708.1 and 708.2(2) (2021). He claims that the district court improperly admitted hearsay evidence at trial through body camera footage of the victim, B.R., speaking with Tama County Deputies Fangman and Foster. On our review, we find that although the admitted body camera footage does not fit within the present sense impression exception to the rule against hearsay—as the district court ruled it did—the recording is admissible under the excited utterance exception. Likewise, because the declarant and Deputy Fangman testified at trial and provided substantially the same statements, along with the detail from an admitted-without-objection 911 call from B.R., there was no prejudice to Evans. Thus, finding no error in the admission of the body camera recording, we affirm the conviction.

**I. Background Facts and Prior Proceedings.**

In the evening of May 30, 2020, Evans (the driver) and B.R. (the passenger) were returning from a funeral in Waterloo in Evans's vehicle. According to B.R., as a disagreement about Evans's driving elevated, Evans stopped the vehicle and punched B.R. in the nose. Evans ordered B.R. out of the vehicle, leaving her along the side of the road. After walking for at least ten minutes, B.R. called 911, and at the end of that twenty-one-minute call, Deputy Fangman and Deputy Foster arrived to give aid and investigate. In the 911 call, B.R. alleges that Evans punched her in the nose. The conversation between the deputies and B.R. was preserved on Fangman's body camera. After this investigation, Evans was later charged with assault causing bodily injury.

At the trial on the assault charge, the district court admitted state's exhibit 1—the twenty-one-minute 911 call with B.R.—with no objections and, over Evans's objection, state's exhibit 2—Deputy Fangman's body camera footage of the interaction with B.R. In the recording of the 911 call, B.R. is distraught and crying as she tells the 911 operator that she was bleeding, that her nose and head hurt, that Evans punched her, and that she just wanted the cops to come and to be able to go home. Prior to the presentation of the evidence at trial, Evans clarified that unlike the 911 call recording, the body camera exhibit was not a present sense impression and thus did not fall within an exception to the rule against hearsay. After the record concluded concerning the exhibit, the district court decided to admit the body camera recording under the present sense impression exception to the rule against hearsay and noted that both Deputy Fangman and B.R. would be testifying to the same details in any event. In the body camera footage, B.R. responds to a question about how the assault happened, shows law enforcement her injuries, discusses pressing charges against Evans, details how law enforcement might find Evans, and explains the process of getting B.R. home and retrieving her possessions from Evans's hotel room. The footage also shows B.R. writing a statement describing the incident.

Both B.R. and Deputy Fangman testified at trial. In addition to the 911 recording and the body camera footage, the district court admitted two photographs of B.R.'s injuries into evidence. In her testimony, B.R. described the details of the evening leading up to and including Evans punching her. She also told the jury about her injuries and her call with the 911 operator before the deputies arrived and began recording body camera footage. While he was

testifying, Deputy Fangman described B.R.'s injuries based on his observations when he arrived, consistent with the two photographs he took. Those photographs showed the swelling under B.R.'s eyes and redness on her nose from two angles.

The jury found Evans guilty, and the district court sentenced him to 270 days in jail with all but thirty days of that sentence suspended. Evans now appeals his conviction.

## II. Standard Of Review.

A determination that evidence is or is not hearsay is reviewed for correction of errors at law. *State v. Thompson*, 982 N.W.2d 116, 121 (Iowa 2022). If hearsay evidence was improperly admitted, we presume prejudice to the defendant "unless the contrary is affirmatively established." *State v. Elliott*, 806 N.W.2d 660, 669 (Iowa 2011) (citation omitted). "The State may show improperly admitted evidence was not prejudicial by proving the error was harmless beyond a reasonable doubt." *State v. Huser*, 894 N.W.2d 472, 495 (Iowa 2017).

## III. Analysis.

Hearsay evidence is a statement that "[t]he declarant does not make while testifying at the current trial or hearing" and that "[a] party offers into evidence to prove the truth of the matter asserted in the statement." Iowa R. Evid. 5.801(c); *see also State v. Fontenot*, 958 N.W.2d 549, 555 (Iowa 2021). "The rule prohibiting hearsay evidence . . . forbids an out-of-court statement used 'to prove the truth of the matter asserted in the statement.'" *State v. Dessinger*, 958 N.W.2d 590, 603 (Iowa 2021) (citation omitted); *see also* Iowa R. Evid. 5.802 (the rule against hearsay). Here, the body camera recording contained statements that were not made at trial but were offered into evidence to prove the truth of the matters it

asserted: the nature of the assault, the motivation behind it, and the extent of B.R.'s injuries. Therefore, it was hearsay and inadmissible unless an exception to the rule against hearsay applies. S*ee* Iowa R. Evid. 5.802 ("Hearsay is not admissible unless any of the following provide otherwise: the Constitution of the State of Iowa; a statute; these rules of evidence; or an Iowa Supreme Court rule.").

The district court admitted the body camera footage under the present sense impression exception, which permits a court to admit "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." Iowa R. Evid. 5.803(1). Although "while or immediately after" does not require "precise contemporaneity," the present sense impression is limited to statements made only after "a slight lapse between [the] event and [the] statement." *Dessinger*, 958 N.W.2d at 600–01 (citations omitted). A lapse of fifteen to twenty minutes between an automobile accident and a conversation with a witness was not too long to overcome the contemporaneity requirement. *Fratzke v. Meyer*, 398 N.W.2d 200, 205 (Iowa Ct. App. 1986). On the other hand, when a statement is closer to a "recalled memory" or if "[t]here was nothing spontaneous about it," the statement may not fit into the present sense impression exception. *Dessinger*, 958 N.W.2d at 601 (declining to rely on the present sense impression for admission of statements when the time gap between the events and the statement was unclear); *see also State v. Michael*, No. 21-0803, 2022 WL 16630316, at *3 (Iowa Ct. App. Nov. 2, 2022) (finding that when the declarant knew that the officer was there investigating the incident and the declarant had enough "time to collect [themself] and formulate a description of the altercation that was favorable to" them, the present sense impression did not apply).

The statements at issue here do not qualify for admission under the present sense impression as they were not made while or immediately after Evans punched B.R. Instead, approximately thirty minutes passed between the incident and the recording of the body camera footage. In her statements on the body camera footage, B.R. focuses on pressing charges against Evans, providing a written statement, and asking about getting her stuff back. Her statements are not made contemporaneous to Evans's actions nor are they spontaneous in nature. In addition, over twenty-one minutes passed between the beginning of the 911 call and the officers arriving, allowing B.R. to possibly formulate a description of the incident that was favorable to her, with the awareness that the deputies were there to investigate the incident and perhaps initiate criminal proceedings. *See Dessinger,* 958 N.W.2d at 600 (noting a present sense impression does not allow for an opportunity to fabricate a statement).

But the State raises another route to the admission of the body camera recording. *See id.* at 599 ("We consider the applicability of exceptions in criminal cases even when not urged at trial as there is no point in reversing a conviction when the evidence will be admissible at retrial in any event."). The State argues the body camera statements were admissible under Iowa Rule of Evidence 5.803(2)—the excited utterance exception—allowing admission of "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused."

To determine if the excited utterance exception to the hearsay rule applies, we follow the five-factor test in *State v. Atwood*:

(1) the time lapse between the event and the statement, (2) the extent to which questioning elicited the statements that otherwise would not have been volunteered, (3) the age and condition of the declarant, (4) the characteristics of the event being described, and (5) the subject matter of the statement.

602 N.W.2d 775, 782 (Iowa 1999). As for the almost thirty-minute lapse of time between the incident and B.R.'s statements to the deputies, we do not find that preclusive to our analysis. In *Atwood,* although the conversation came almost two and one-half hours after the incident, the district court found the statement met the excited utterance exception because the circumstances supported a finding of excitement on the part of the declarant. *Id.* ("Lapse of time alone will not ordinarily preclude application of the excited-utterance exception."). And under the second factor, B.R.'s statements were elicited by the deputies in an open-ended question format with a focus on what happened. *See id.* at 782-83 (finding a statement responding to an open-ended question, such as "what happened?" was more likely to be determined to be an excited utterance than a response to leading questions). While the video lasted for about twelve minutes, B.R.'s description of what happened lasted just short of three minutes during which she was crying and emotional. *See State v Mateer*, 383 N.W.2d 533, 535 (Iowa 1986) (characterizing statements as excited utterances where the "questions merely anticipated excited descriptions of the incident which the complainant and her girlfriend were bound to volunteer to the officer in any event").

And with facts similar to those here, our court found statements recorded on dash cam audio from an emotional witness who was "frazzled" and "extremely upset" constituted an excited utterance and satisfied the exception's factors allowing admission of the evidence. *State v. West,* No. 15-1431, 2016 WL

5930629, at *4-5 (Iowa Ct. App. Oct. 12, 2016). In *West,* viewing the circumstances as a whole, the court determined the witness was "under the influence of the excitement of the incident rather than upon reflection or deliberation." *Id.* at *5 (quoting *Atwood*, 602 N.W.2d at 782) ("[The witness] and her son had just been in a physical altercation that escalated to a shooting; [the witness] had been struck; her son had been shot; and she was talking to a police officer while her son received medical attention in an ambulance nearby."). In the body camera footage, B.R. answers what had happened but is crying and emotional. Reviewing the circumstances as a whole, she expressed her fear during the drive with Evans, surprise that he struck her hard enough to cause injury and tried to do so again, anger at being left on the road, and alarm that he said he would come back and shoot her as she relayed to the 911 operator. The body camera conversation was short in duration, and B.R. only offered information requested by Deputy Fangman. So, B.R. was still under the influence of the excitement of the incident when she was recorded by the body camera. Because the body camera statements were admissible as excited utterances, the district court did not err in admitting the footage.

Finally, even if no exception applied to the hearsay statements in the footage, a statement is not grounds for reversal unless it is prejudicial to the nonoffering party. *Thompson*, 982 N.W.2d at 121. "[T]he district court lacks 'discretion to admit hearsay in the absence of a provision providing for it' or deny the admission of hearsay if it falls within an exception." *Id.* (citation omitted). And all hearsay is considered prejudicial unless the record affirmatively establishes otherwise. *See id.*; *see also State v. Huser*, No. 10-2067, 2011 WL 6079120, at

*12 (Iowa Ct. App. Dec. 7, 2011) ("Erroneously admitted statements are not proper grounds for reversal if the State can prove the inadmissible evidence did not have an impact on the jury's guilty verdict."). Even so, hearsay evidence that is merely cumulative may not be prejudicial. *Elliott*, 806 N.W.2d at 669; *State v. Newell*, 710 N.W.2d 6, 19 (Iowa 2006) ("[E]rroneously admitted hearsay will not be considered prejudicial if substantially the same evidence is properly in the record"). When the party making the hearsay statements testifies at trial and makes the same statements, the hearsay statements are cumulative. *State v. Hildreth*, 582 N.W.2d 167, 170 (Iowa 1998) ("[W]e will not find prejudice if the admitted hearsay is merely cumulative."); *see also State v. Loyd*, No. 22-0067, 2022 WL 17826935, at *2 (Iowa Ct. App. Dec. 21, 2022); *State v. Noggle*, No. 21-1969, 2022 WL 17829123, at *4 (Iowa Ct. App. Dec. 21, 2022) (finding that when the hearsay information "was nearly identical to the testimony of the witness," reversal was not warranted).

On this point, the State argues harmless error and we find that even if the body cam statements were not admissible under an exception to the prohibition against hearsay, because B.R.'s statements were cumulative, their admission does not require reversal. First, B.R. described the details of the assault to the jury. Then, without objection, the State played the 911 tape and the jury heard B.R.'s emotional description of how the assault happened. In that 911 recording, B.R. described her injuries, confirmed that Evans hit her, and gave details about the pain she was in and her bleeding. Deputy Fangman likewise testified at trial providing the same detail from the recording. In addition, Evans did not object to admission of the 911 recording or to the two photographs of B.R.'s injuries. Again,

each of these pieces of evidence provided another source of the same information apart from the body camera footage.  Thus, the evidence was merely cumulative.

**IV. Conclusion.**

For these reasons, we find the admission of the body cam footage did not violate the rule against the admission of hearsay and, in any event, there was no prejudice to Evans, so we affirm the conviction.

**AFFIRMED.**