# IN THE COURT OF APPEALS OF IOWA

No. 22-0334
Filed December 20, 2023

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**DEAARON JACQUIA SIMPSON,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Dubuque County,
Monica Zrinyi Ackley, Judge.


        A criminal defendant appeals his convictions for domestic abuse assault
causing bodily injury and assault causing serious injury.  **AFFIRMED.**


        Chris Raker of Alliance Law Office, P.C., East Dubuque, Illinois, for
appellant.

        Brenna Bird, Attorney General, and Genevieve Reinkoester, Assistant
Attorney General, for appellee.


        Heard by Greer, P.J., and Ahlers and Buller, JJ.

**BULLER, Judge.**

A jury found DeAaron Simpson guilty of domestic abuse assault causing bodily injury and assault causing serious injury for beating his live-in girlfriend. On appeal, Simpson claims a variety of errors, nearly all of which are waived or unpreserved. We affirm.

### I.    Background Facts and Proceedings

Twenty-two-year-old S.M. moved out of her parents' home and into Simpson's apartment. S.M. had been close with her family but virtually cut ties with them after moving in with Simpson.

A few months after she moved, S.M. sent a message to a family group-text with her mother, father, and one of her brothers:

> Please do not respond….Add Steve to this group [as] well!!!!! I need help getting my stuff out of here because I am in a very controlling abusive relationship….DO NOT FUCKING RESPOND. First stop is to jump my Jeep because it is dead.

S.M.'s mother called the police, and she and S.M.'s father drove to where they believed S.M. was living with Simpson.

S.M.'s mother showed police the message, and they knocked on the apartment door. S.M. answered, and police observed her to be "visibly upset," "crying," and "scared," with "bruises to her face and eyes and looked to be assaulted." Body-camera footage corroborated that description, as did S.M.'s family.

S.M., through tears, told police Simpson assaulted her the night before and "this happened more than once." She said Simpson punched her in the face, head, hand, and body multiple times with closed fists. And she explained that injuries to

her hands were from holding them in front of her face for protection while Simpson punched her. Police later opined the injuries were consistent with "defensive wounds."

S.M. described "yelling" and "begging" for Simpson to stop beating her. But she said Simpson only stopped because her dog Lucky started barking. S.M. emphasized she did not want law enforcement involved or charges filed. She told one officer she wasn't "pressing no charges" because she "wasn't a snitch."

With S.M.'s permission, police entered the apartment and found Simpson sleeping. After waking, Simpson denied assaulting S.M. but confirmed she was his live-in girlfriend. He told police "I don't hit women," and officers arrested him.

S.M.'s family took her to the hospital, where she told medical providers she was there because of a "domestic" and she "got beat up by [her] partner." Medical records documented S.M.'s reports of pain, significant bruising and swelling, and a fractured left hand.

The Dubuque County Attorney charged Simpson by trial information with one count of domestic abuse assault causing bodily injury, a serious misdemeanor in violation of Iowa Code section 708.2A(2)(b) (2021), and one count of assault causing serious injury, a class "D" felony in violation of Iowa Code section 708.2(4). A no-contact order prohibited contact between Simpson and S.M.

S.M. did not cooperate with police or prosecutors in the lead-up to trial. She eventually gave a discovery deposition, in which she claimed to not recall the attack and admitted she was pregnant with Simpson's child, apparently conceived in violation of the no-contact order. The State chose to not call S.M. as a witness at trial, and Simpson tried to subpoena her without success.

Simpson eventually offered S.M.'s discovery deposition into evidence, and the court admitted it over the State's objection. There was a disjointed back-and-forth over whether the text-message S.M. sent her family would be included because it was a deposition exhibit. The court ultimately admitted the entirety of the discovery deposition, including the exhibit.

Simpson testified in his own defense. Because Simpson told police he did not "hit women" on a video shown to the jury, the prosecutor impeached him with a prior conviction for assaulting a woman. The prosecutor also impeached Simpson's testimony he was employed at the time of arrest by pointing to the financial affidavit where Simpson swore that he had no income that year.

The jury found Simpson guilty as charged, and the court sentenced him to prison. The court also, for a third time, denied S.M.'s request to dissolve the no-contact order. The court explained that it was "very concerned for the well-being and the safety of the victim in this case" in light of Simpson's conduct—including but not limited to multiple violations of the no-contact order. Simpson appeals.

## II.    Standard of Review

We generally review preserved evidentiary claims for abuse of discretion. *State v. Neiderbach*, 837 N.W.2d 180, 190 (Iowa 2013). We review preserved hearsay challenges for correction of errors at law. *Id.* And we review preserved prosecutorial-misconduct claims for an abuse of discretion. *Id.*

## III.    Discussion

Simpson makes a variety of claims relating to admission of S.M.'s discovery-deposition transcript, the impeachment based on his financial affidavit,

and alleged prosecutorial misconduct. We find all these claims plagued by various waivers and failures to preserve error, and we address each separately.

**A. The Deposition Transcript**

Simpson's first claim on appeal, as we understand it, is that the district court should have found S.M. "unavailable" and admitted the transcribed discovery deposition. Although we express no opinion on the merits of admitting the transcript over the State's objection, we find Simpson cannot complain about an exhibit he successfully sought to admit. *See State v. Trane*, 984 N.W.2d 429, 435 (Iowa 2023) (finding defendant's elicitation of evidence waived any objection to the court considering it); *McCracken v. Edward D. Jones & Co.*, 445 N.W.2d 375, 378 (Iowa Ct. App. 1989) ("[I]t is elementary a litigant cannot complain of error which he has invited or to which he has assented.").

To the extent Simpson urges a claim related to his decision to testify, we find this argument was never made at trial. *See Patchette v. State*, 374 N.W.2d 397, 401 (Iowa 1985) ("We cannot consider an issue for the first time on appeal, even if it is of constitutional dimension."). And to the extent Simpson's appellate brief includes a passing reference to reading the deposition aloud instead of submitting it as an exhibit, he cites no legal authority in support of this claim, and we deem it waived. *See* Iowa R. App. P. 6.903(2)(g)(3) (requiring legal authority to support contentions).

Given the murky record, we assume without deciding that a hearsay objection to the text-message exhibit was preserved and adequately briefed on appeal. We conclude the statement was an excited utterance. *See* Iowa R. Evid. 5.803(2) (defining an excited utterance as "relating to a startling event or

condition, made while the declarant was under the stress of excitement that it caused"). The text message included an expletive, five exclamation points, and a sentence in all capital letters. These are strong indicia of an excited state. *See Morten v. State*, 215 A.3d 846, 851 (Md. Ct. Spec. App. 2019) (quoting Professor Irving Younger's explanation of an excited utterance in his famous lecture series: "It begins with 'My God' and ends with an exclamation point!"). Any doubt as to whether S.M.'s excited state persisted is dispelled here by the unanimous witness accounts from family members and police, corroborated by body-camera recordings, that indicate S.M. was still visibly distraught when police arrived soon after the message was sent. *See State v. Atwood*, 602 N.W.2d 775, 782 (Iowa 1999) (setting forth factors to evaluate excited utterances); *State v. Stafford*, 23 N.W.2d 832, 836–37 (Iowa 1946) (finding a statement made fourteen hours after an event qualified as an excited utterance). And even if the text message was not admissible under an exception to hearsay, overwhelming evidence of Simpson's guilt renders any error harmless, in part because the jury heard substantially similar statements by S.M. on body-cam recordings played at trial without objection. *See State v. Elliott*, 806 N.W.2d 660, 669 (Iowa 2011) (considering hearsay evidence in context of cumulative evidence and harmless error).

## B. The Financial Affidavit

Simpson next claims the district court abused its discretion under Iowa Rules of Evidence 5.401 (relevance) and 5.403 (substantially more unfairly prejudicial than probative) when it permitted the prosecutor to impeach Simpson with reference to statements in his financial affidavit. These objections were not

made below, and Simpson did not obtain a ruling. We cannot consider the alleged errors. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

### C. Prosecutorial Misconduct

Simpson's last claim asserts prosecutorial misconduct because the State used his criminal history to impeach his statement that he did not "hit women." The only arguable objections made below were that Simpson did not believe the State should mention that his prior conviction involved a sexual assault and he wanted the prosecutor to mention the date of the offense. The prosecutor limited the examination as requested at the direction or suggestion of the court. No objection to prosecutorial misconduct was made below and Simpson did not move for a mistrial. Error was not preserved. *State v. Krogmann*, 804 N.W.2d 518, 526 (Iowa 2011) ("[A defendant] cannot obtain a new trial based on prosecutorial misconduct when he failed to move for a mistrial at the time.").

### IV. Disposition

Finding no reversible error properly before us, and recognizing overwhelming evidence of Simpson's guilt, we affirm his convictions.

**AFFIRMED.**