# IN THE COURT OF APPEALS OF IOWA

No. 17-1194
Filed December 19, 2018

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**MARVIN LEE HEGGEBO,**
    Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Black Hawk County, Andrea J. Dryer,
Judge.


        Marvin Heggebo appeals from his conviction and sentence for second-degree sexual abuse. **AFFIRMED.**



        Mark C. Smith, State Appellate Defender, and Nan Jennisch, Assistant
Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Sharon K. Hall, Assistant Attorney
General, for appellee.


        Considered by Danilson, C.J., and Vogel and Tabor, JJ.

**DANILSON, Chief Judge.**

Marvin Heggebo appeals from his conviction and sentence for second-degree sexual abuse following jury trial. Heggebo contends the trial court erred in admitting statements the child witness made to her mother and in admitting the video recording of the daughter's interview at the Child Protection Center. Because we conclude the statements and video were properly admitted, we affirm.

**I. Background Facts and Proceedings.**

Heggebo was charged with second-degree sexual abuse, in violation of Iowa Code section 709.3(1)(b) (2015), after he was accused of abusing a four-year-old child while he was babysitting the child and her brother. The children's father arranged for Heggebo to watch the children while the children's mother went to a job interview. The mother dropped the children off at Heggebo's house and left for her job interview.

When the mother returned to pick up the children, she walked into the house and did not see anyone. The mother called out for the children, the bathroom door swung open, and the children came out of the bathroom. The mother saw Heggebo sitting naked on the toilet. The mother told the children, "You don't go in the bathroom with [Heggebo]. You don't go in the bathroom with anybody." Heggebo quickly shut the bathroom door and said nothing.

The daughter did not seem eager to greet her mother. Initially, the daughter refused to come to her mother. When the daughter finally did come to her mother, the mother noticed a clear substance around the daughter's mouth. The mother asked her daughter what the substance was, but the daughter looked away and said nothing. The mother touched the substance and smelled it. The mother

described the substance as an odorless, sticky "glob of clear fluid," that looked like semen.

Heggebo came out of the bathroom wearing only shorts just as the mother was telling the children to put on their coats. The mother took the children outside to her vehicle, secured her son in his car seat, and then spoke with her daughter. The mother assured her daughter she was not in trouble but told her, "You need to tell mommy what's on your face." Her daughter did not respond. The mother then asked, "Will you please tell mommy what that is?" Then, her daughter replied it was "pee" on her face. The mother asked, "What did [Heggebo] do to put that 'pee' on your face?" Pointing at her own mouth, the daughter responded that Heggebo touched his "pee pee" and that "it" went into her mouth.

The mother called and told the children's father what happened, and he advised her to take the children home. The father then called the mother back and asked her to bring the children to him at work so he could look at the substance on their daughter. The mother drove to the father's work, and the father spoke with his daughter briefly about the incident. The father thought his daughter was unusually quiet and withdrawn.

At some point, the mother contacted the police, and a police officer arrived at the father's work. The family went to the police station where the mother was interviewed and swabbed for forensic evidence.[1] The family then went to the hospital, and the daughter underwent a physical examination. During the exam, the daughter told the nurse practitioner that Heggebo had touched his "pee pee"

---

[1] The mother was swabbed because she had touched the substance on her daughter's face.

to her mouth and that "pee" had gotten on her face. The daughter underwent a sexual-assault forensic examination. Later DNA testing did not detect any of Heggebo's DNA on either the mother or her daughter.

After the physical examination, the daughter was taken to the Child Protection Center ("CPC") at the hospital where a forensic interviewer spoke with her about the incident. This interview was video-recorded. The daughter told the CPC interviewer that she and her brother were at Heggebo's house. She said Heggebo was "sitting on the potty" in the bathroom, and he tried to take out his "pee pee" and pulled down his pants. Several times, the daughter said Heggebo was "naughty." When the interviewer asked the daughter to describe Heggebo's "pee pee," she responded that it looked like a "pee pee" and was "for going potty." The daughter indicated Heggebo told her to play with his "pee pee" using her mouth, and she confirmed her mouth touched it. The daughter told the interviewer that Heggebo "squished it"—his "pee pee"—"with [her] mouth." When asked if anything came out of his "pee pee," the daughter answered "pee."

Meanwhile, the police went to Heggebo's house to execute a search warrant. Heggebo answered the door wearing only shorts. The police seized Heggebo's shorts because the shorts had apparent semen stains on them. Heggebo was eventually arrested in connection with the alleged sexual assault. Penile swabs were collected from Heggebo. The penile swab revealed seminal fluid but no spermatozoa, and tests showed the stains from the shorts contained both seminal fluid and spermatozoa.

The daughter's mother testified at trial about her observations made when she arrived at Heggebo's house. She also testified as to what her daughter told

her.  Heggebo objected to the mother testifying as to the daughter's statements. The district court determined these statements fell within the hearsay exception for present sense impressions under Iowa Rule of Evidence 5.803(1).  The court also determined the statements fell within the hearsay exception for excited utterances under rule 5.803(2).

At the time of trial, approximately fifteen months after the alleged abuse, the daughter was five years old.  The daughter testified she remembered being in the bathroom with Heggebo but did not remember what had happened.  She remembered telling her mother Heggebo's "pee" was on her face, but she did not remember how it got there.  She remembered a doctor wiped the "pee" off her face, but she did not know where the "pee" came from.  She gave inconsistent answers about whether she remembered talking to doctors or talking in the room with the camera.  She did not remember telling the CPC interviewer Heggebo had touched her with his "pee pee."

Because the daughter could remember very little, the State sought to introduce the video recording of the CPC interview.  Heggebo objected to the admission of the video, but the court ultimately admitted the recorded interview under rule 5.807's residual hearsay exception.  The video of the interview was played for the jury.

Heggebo did not testify at trial, and the defense presented no other evidence.  The jury found Heggebo guilty.  Heggebo filed motions in arrest of judgment and for new trial, and the court denied both following a hearing on the motions. The court imposed the statutory sentence carrying a mandatory minimum term and special sentence.  Heggebo appeals.

**II. Scope and Standard of Review.**

We review the admission of an exhibit or testimony challenged as hearsay for the correction of legal error. *See State v. Plain*, 898 N.W.2d 801, 810 (Iowa 2017).

**III. Discussion.**

**A. Witness's Statements to Mother.**

*1. Present Sense Impression.*

Heggebo contends the present sense impression exception to the hearsay rule does not apply to the daughter's statements to her mother because there is no indication in the record how much time had elapsed between the incident in Heggebo's bathroom and the daughter's statements to her mother. The State disagrees there was a significant time break such that the statements would no longer have the guarantees of trustworthiness.

Hearsay is "a statement that: (1) The declarant does not make while testifying at the current trial or hearing; and (2) A party offers into evidence to prove the truth of the matter asserted in the statement." Iowa R. Evid. 5.801(c). The daughter's statements to her mother are not admissible unless they qualify under an exception to the rule against hearsay. *See* Iowa R. Evid. 5.802 ("Hearsay is not admissible unless any of the following provide otherwise: the Constitution of the State of Iowa; a statute; these rules of evidence; or an Iowa Supreme Court rule.").

The present sense impression exception found in rule 5.803(1) provides that "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it" is not barred by the hearsay rule. The

phrase "immediately thereafter" has been interpreted to mean a time within which it is unlikely that the declarant had an opportunity to form a purpose to misstate the declarant's observations. *See Fratzke v. Meyer*, 398 N.W.2d 200, 205 (Iowa Ct. App. 1986). The present sense impression exception is based upon the theory "that substantial contemporaneity of event and statement negate the likelihood of deliberate or conscious misrepresentation." *State v. Flesher*, 286 N.W.2d 215, 217 (1979) (quoting the Advisory Committee Note, Fed. R. Evid. 803).

When the mother arrived at Heggebo's house to retrieve her children, the children were inside a closed bathroom with Heggebo. When the mother called out to the children, the children came out of the bathroom where Heggebo was sitting—naked—on the toilet. The daughter had what appeared to be semen on her face. These facts strongly suggest the abuse had recently occurred.

The daughter's statements to the mother occurred after the mother had taken the children to her vehicle and placed the son in his car seat. Considering there was apparent semen on the daughter's face when the mother arrived, and the fact Heggebo was still naked, the amount of time that had elapsed between the abuse and the statements was essentially however long it took the mother to put on the children's coats, take them to her vehicle, and place them inside. This brief passage of time does not render the statement non-contemporaneous. *See Fratzke*, 398 N.W.2d at 206 (concluding statements made fifteen to twenty minutes between a car accident and subsequent statement were substantially contemporaneous and within the ambit of the present sense impression exception).

We agree with the district court that the daughter's statements were made "immediately thereafter" perceiving the events, as that phrase is understood under the rules of evidence. We find it extremely unlikely the four-year-old declarant had an opportunity to form a purpose to misstate her observations. *See id.* at 205. The court did not err in admitting the statements under the present sense impression exception.

*2. Excited Utterance.*

Even if the daughter's statements were not admissible under the present sense impression exception, the statements are admissible under the excited utterance exception.

An excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of the excitement caused by the event or condition." Iowa R. Evid. 5.803(2). The application of the exclusion lies largely within the discretion of the trial court, which should consider:

> (1) the time lapse between the event and the statement, (2) the extent to which questioning elicited the statements that otherwise would not have been volunteered, (3) the age and condition of the declarant, (4) the characteristics of the event being described, and (5) the subject matter of the statement.

*State v. Atwood*, 602 N.W.2d 775, 782 (Iowa 1999). The critical question is whether the statement was "made under the influence of the excitement of the incident rather than upon reflection or deliberation." *Id.*

Heggebo contends the excited utterance exception does not apply because the daughter's statements were "not spontaneous in reaction to a startling event but rather responses to persistent questioning by her mother."

Our supreme court has permitted the use of the excited utterance exception in cases where the declarant was responding to a question, so long as the questions were "not calculated to elicit information which would otherwise have been withheld." *State v. Brown*, 341 N.W.2d 10, 13 (Iowa 1983) (quoting *State v. Watson*, 242 N.W.2d 702, 704 (Iowa 1976)). "[T]he fact that a statement was prompted by a question does not automatically disqualify it as an excited utterance." *State v. Harper*, 770 N.W.2d 316, 320 (Iowa 2009); *see also Atwood*, 602 N.W.2d at 782–83 (determining a statement in response to the question "what happened?" was an excited utterance). We also note that in *Watson*, a rape victim who was "still suffering from her harrowing experience" was asked, "What's the matter?" 242 N.W.2d at 704. The court stated such a question "was the most natural one under the circumstances" and not intended to elicit information that may have otherwise been withheld. *Id.* We believe the mother's questions here were also the natural questions to ask and were neither suggestive nor implying any wrongdoing, startling event, or condition.

Here, the daughter did not seem eager to greet her mother. Initially, the daughter refused to come to her mother. The mother asked her daughter about the substance on the daughter's face, but the daughter did not initially answer. The mother testified she "kept asking [the daughter] if she would tell me what it was." After taking the daughter to the car, the mother assured the daughter she was not in trouble and asked her again about the substance on her face. The daughter refused to answer. The mother asked, "Will you please tell mommy what that is?" and the daughter answered that the substance was "pee." The mother

asked, "What did [Heggebo] do to put that pee on your face?" The daughter answered Heggebo touched his "pee pee" and "it" went into her mouth.

Under these circumstances, we conclude the statements were excited utterances despite responding to the questions from the mother. As discussed above, the amount of time between the startling event and the statements was brief. The mother asked the daughter several times what the substance was before the daughter answered, and asked once how the substance got on the daughter's face. The daughter was four years old, and the mother testified the daughter was "acting standoffish" and "not her normal demeanor." This abnormal behavior, which we would describe as being distraught, disturbed, or perhaps in shock, supports the conclusion the daughter was under the influence of a startling event. Based on the characteristics of the event, subject matter of the daughter's statements, and the other surrounding circumstances, we conclude these were not statements made upon "reflection or deliberation." *See Atwood*, 602 N.W.2d at 782. The court did not err in admitting the statements under the excited utterance exception.

**B. Video of CPC Interview.**

Heggebo also contends the court erred in admitting the video of the CPC interview. The court admitted the recorded interview under the residual hearsay exception under Iowa Rule of Evidence 5.807. In order for evidence to be admissible under the residual exception, it must meet the requirements of: (1) trustworthiness; (2) materiality; (3) necessity; (4) service of the interests of justice; and (5) notice. *See State v. Rojas*, 524 N.W.2d 659, 662–63 (Iowa 1994); *see*

*also* Iowa R. Evid. 5.807 (formerly rule 803(24)). Heggebo challenges the trustworthiness, necessity, and service of the interests of justice.

*1. Trustworthiness.*

Heggebo contends the recorded interview is untrustworthy because the statements were not made under oath; there was no indication the daughter had an ability to distinguish between the truth and a lie and she was not asked about those concepts; and several times during the interview the daughter referred to Heggebo as "naughty" or a "bad guy," indicating she may have been coached.

The district court found the recorded interview was trustworthy. The court noted the daughter described matters within her personal knowledge; the interview took place within the same day of the alleged incident; the interviewer asked non-leading questions, and many of the daughter's statements were spontaneous; there was no evidence of improper motive on the daughter's part to make any statements; the daughter's demeanor during the interview; and the daughter's statements were consistent with testimony from the mother.

It has been noted "videotape is more reliable than many other forms of hearsay because the trier of fact [can] observe for itself how the questions were asked, what the declarant said, and the declarant's demeanor." *Rojas*, 524 N.W.2d at 663. We agree with the district court the interview has sufficient circumstantial guarantees of trustworthiness for the same reasons cited by the court.

*2. Necessity.*

Heggebo contends admission of the interview was not necessary because there was other available evidence regarding the sexual abuse. Namely, Heggebo

cites the mother's testimony about her observations and about the daughter's statements. Heggebo also cites testimony from medical personnel about statements the daughter made during her physical examination that Heggebo touched his "pee pee" with her mouth and that something come out of the "pee pee" "right on my face." Heggebo also argues the interview was not necessary because the daughter's trial testimony was consistent with the statements she made to her mother, medical personnel, and the CPC interviewer.

A statement is "necessary" if it is "more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts." *See* Iowa R. Evid. 5.807(a)(3).

The court concluded the recorded interview was necessary because the child witness's recollection was insufficient due to her young age. The daughter did testify at trial, but she did not remember what had happened in the bathroom, she did not remember how the "pee" got on her face, she did not remember where the "pee" came from, she gave inconsistent answers about whether she remembered talking to doctors or in the room with the camera, and she did not remember telling the CPC interviewer Heggebo had touched her with his "pee pee."

The mother testified as to her observations, including the fact the children were with a then-naked Heggebo in the bathroom when the mother arrived. She testified there was a sticky, clear fluid on the daughter's face that she thought looked like semen. The mother testified the daughter told her Heggebo's "pee" was on her face, Heggebo touched his "pee pee," and "it" went into her mouth.

The nurse's testified the daughter told her Heggebo touched his "pee pee" "to her mouth." The nurse asked if anything came out of the "pee pee" and the daughter answered, "Yes, right on my face."

During the interview, the daughter told the interviewer Heggebo touched his "pee pee" with her mouth. The daughter told the interviewer Heggebo tried to play with his "pee pee." The daughter said Heggebo tried to push his "pee pee" out of his pants before he took his pants off. The daughter repeatedly said Heggebo "squished it [his "pee pee"] with [her] mouth." She told the interviewer Heggebo told her "to play with his pee pee" with her mouth.

There is some overlap in the mother's testimony, the nurse's testimony, and the statements the daughter made in the CPC interview. But, we conclude the district court did not err in determining the video of the CPC interview is more probative on the issue of whether Heggebo committed sex abuse than either the testimony of the mother or of the nurse, and is thus, "necessary." *See State v. Neitzel*, 801 N.W.2d 612, 623 (Iowa Ct. App. 2011) (concluding the admission of a child's videotaped interview was necessary under rule 5.807 because of the child's young age when the abuse occurred and inability of the child to testify to the abuse at made the close-in-time video recitation the most probative evidence of the abuse that occurred); *see also State v. Olds*, No. 14-0825, 2015 WL 6510298, *7-8 (Iowa Ct. App. Oct. 28, 2015) (concluding CPC interview recording was admissible, noting the interviews were completed by an expert forensic interviewer shortly after the allegations surfaced and well before the trial; the interviewer followed all the proper procedures for the forensic interviews; the interview was videotaped, allowing the trier of fact to observe for itself how the

questions were asked, what the declarant said, and the declarant's demeanor; and there was no known reason for fabrication).

### 3. Service of the Interests of Justice.

Lastly, Heggebo contends admission of the CPC interview does not serve the interests of justice. Heggebo bases this argument upon his contention admission of the CPC interview was not necessary. Evidence serves the interests of justice where "[t]he appropriate showing of reliability and necessity were made and admitting the evidence advances the goal of truth-seeking expressed in Iowa Rule of Evidence [5.102]." *Rojas*, 524 N.W.2d at 663. Because the court did not err in concluding the statements were trustworthy and necessary, we conclude admitting the recorded interview serves the interests of justice.

## IV. Conclusion.

Finding no error in the admission of the mother's statements and the video of the CPC interview, we affirm Heggebo's conviction and sentences.[2]

**AFFIRMED.**

---

[2] Finding no error in the admission of the challenged evidence, we do not address Heggebo's or the State's arguments regarding harmless error.